A95A1567. HOWARD v. THE STATE.
(461 SE2d 274)

BIRDSONG, Presiding Judge.

John Howard appeals his conviction for trafficking in cocaine and conspiracy to traffic in cocaine.

Candace Harper was arrested for speeding in Dooly County on August 28, 1993. She gave permission to search and more than 400 grams cocaine were found in her vehicle. Harper testified she was told in Atlanta by a person known as "Quick" to take a package of cocaine to "John" in Waycross. She told investigators she had met John in Waycross in July 1993, when she picked up some money "for

Quick." She had called John from a store; he came to the store, led her to his house, and gave her $8,000 to take back to Atlanta. She did this at least four times, bringing cocaine to John and returning with money for Quick. After she was arrested she was taken to Ware County, where she identified John Howard from a photographic line-up and took officers to Howard's house at 1415 Thomas Street. She gave police John's telephone number, and it corresponded to that house. She agreed to assist police in apprehending John. She registered at a motel where video cameras were installed in a room and in the parking lot. About an ounce of the cocaine was placed in the trunk of the car in a paper bag. She called John Howard and told him to "come pick up this [stuff], the car is tore up." He first asked her if she had called Quick. He then agreed to meet her. This call was recorded. Appellant came to the motel about ten minutes later. Harper told him it was in the trunk and gave him the car keys; he removed a paper bag from the trunk. When police tried to arrest him, he threw down the paper bag and fled.

Appellant testified he knew Quick from playing ball in Atlanta and that he "knew of" Candace Harper as Quick's friend, but that there was no drug deal; that Harper called him late at night saying her car was broken; and that he first suggested she call Quick and then agreed to come help her. He looked in the trunk of the car to get tools to fix the car, and when he saw several men rush toward him, he panicked and ran. Defense counsel attempted to discredit Candace Harper as a convicted felon and drug dealer who received probation by agreeing to implicate appellant. *Held*:

1. Appellant contends the jury did not reach a unanimous verdict but merely agreed to a conviction so as to expeditiously terminate the matter.

The jury began deliberation at 2:00 p.m. At 2:17 they asked to see and hear the tapes again, and a juror asked what time of day Candace Harper made her telephone call to John. The court replied: "If it's in the evidence, it's in the evidence. If it's not, we can't answer it." The court replayed the videotapes.

The jury again withdrew at 2:27 p.m. At 3:15 the jury returned a verdict of guilty on both counts. When asked if that was his verdict, Juror Deane said, "Judge, can I be honest. . . Beyond a reasonable doubt, no. THE COURT: Are you telling the Court this is not your verdict? JUROR: *We had to come to a unanimous decision*, and there were, to be honest, a couple of us who have some reservations about what we've heard and seen. THE COURT: . . . Well, then the Court will not accept this verdict because it is not unanimous. The jury will go back to their jury room and continue with your deliberation. Give them their papers back. The verdict, ladies and gentlemen, must be a unanimous verdict. It must be a verdict that each one

agrees on." (Emphasis supplied.)

At 3:20 p.m. the jury retired again. At 3:43 the jury sent a note saying one juror would like to speak to the judge. The court declined to conduct individual conversations. Defense counsel made a motion for mistrial, saying "the jury seems to be hopelessly deadlocked." The court overruled that motion. The jury was brought in. Juror Roach said: "The [only] question I had was whether the law could do what. . . . It's my opinion and my opinion only, like he was being, you know, trapped into this thing; like it being a controlled thing . . . whether he was actually, you know, trapped into this situation. . . . If this lady hadn't got stopped in Dooly County, would he have got in, you know, the rest of this going on. . . . That was the [only] question that was on my mind. Is that lawful? THE COURT: You used the word entrapment. I didn't give you any charge on entrapment. JUROR: Well, I'm just saying that's just what I felt a little like it was. . . . THE COURT: The only thing I can tell you is I did not charge the jury on entrapment. JUROR: That's the only thing that I didn't really understand. THE COURT: I can't answer your question any further. . . . [Y]ou're asking about a question of fact, anyway. JUROR: Yes, sir. . . . There's still a big question mark on my mind about that. THE COURT: All right, sir. Was that the question of anybody else? All right. . . . I'm going to let you stay here till four o'clock, and then I'm going to have to go, *but we're not going to mistry this case.* Oftentimes . . . the jury can . . . come back refreshed somewhat, and be able to decide a case, if you can. Of course that's entirely your responsibility. It's out of my hands, it's out [of] the attorneys' hands, it's out of everybody's hands. You are the judges of it all. I can try to answer a question, if I can, but that's all I can do. We can play those tapes back like you asked, we can do little things like that, but, really, *it's with you, and that's all there is to it.* Do you want to go back for a few minutes, or do you all want to just go ahead and adjourn now until in the morning? THE FOREPERSON: Could I get the legal definition of entrapment?" (Emphasis supplied.)

The court conducted a bench conference, whereat the prosecutor said: "[E]ntrapment is not a defense in this case. . . . [I]f [Howard says he was entrapped] he opens up his record. That's the reason entrapment is not a defense here. . . . DEFENSE COUNSEL: [T]hey seem to have a question about volitional will and knowledge, and perhaps a recharge on knowledge would be proper, Your Honor. PROSECUTOR: . . . The Court should just inform them that entrapment is not applicable. . . . DEFENSE COUNSEL: . . . That may honor the letter of what they're requesting, but the spirit seems to be [that] they have some disagreement — PROSECUTOR: Well, no sir, they're supposed to apply the Court's charge."

The trial court recharged the jury that appellant must have rea-

sonably believed he went to the motel to receive a package of cocaine, and recharged as to the law of conspiracy and the requirements of knowledge and intention to commit conspiracy and trafficking in cocaine. Juror Roach asked again: "What is the definition of the law on entrapment? THE COURT: No, I've already answered that to begin with. I said I did not charge you on entrapment. That's all I can tell you about that."

The jury withdrew at 3:58 p.m. At 4:07 the jury published a verdict of guilty. One juror answered "[y]es" before she was polled, and then said: "Yes . . . it is my verdict. . . . And I'm sorry I was so hasty and ready to go."

After the jury was polled, defense counsel said: "Based on the comments of the lady that's in such a hurry, Your Honor, I'm questioning whether or not they just want to get out of here or if that's really their verdict. *Could they be instructed that they really need to take their time on this and reach a verdict that is unanimous*?" (Emphasis supplied.) The court did not give such an instruction.

The upshot is that the jury deliberated 88 minutes before returning a verdict which was not unanimous; and after being told the trial court *would not declare a mistrial* and that the responsibility to reach a verdict was entirely theirs "*and that's all there is to it,*" the jury deliberated only nine minutes more before returning guilty verdicts. (Emphasis supplied.) In total, the jury deliberated only 97 minutes. Only minutes before this guilty verdict was rendered, a juror expressed a "big question mark" as to whether the defendant was "trapped," but the jury was told a mistrial would not be declared: "[I]t's with you, and that's all there is to it." These remarks instructed the jury that it would be required to reach a verdict "one way or the other," as in *McMillan v. State*, 253 Ga. 520, 523 (4) (322 SE2d 278). The instructions were "tantamount to charging that even in the event of any conscientious and irreconcilable difference of opinion between the jurors, one or more jurors would be required to surrender his view in order to reach a verdict," as in *Sanders v. State*, 162 Ga. App. 175, 177 (290 SE2d 516). The entire circumstances indicate the jury believed it was required to reach a verdict, as in *Stephens v. State*, 261 Ga. 356 (405 SE2d 470). With its first verdict the jury showed they believed they all "had to come to a unanimous decision" even if some privately disagreed with it. The jury then showed the basis of their fundamental disagreement, but reached its second verdict minutes later, with no instruction how to resolve their differences. With no instruction in the nature of an *Allen* charge, it is highly probable these jurors believed they had no choice but to acquiesce in the conclusions of their fellows. Taken together, the trial court's instructions and remarks were such as "to cause a juror to abandon an honest conviction for reasons other than those based

upon the trial or the arguments of other jurors." *McMillan*, supra; *Stephens*, supra at 357. The final verdict was premature, and we are of the opinion that some jurors abandoned honest convictions for reasons other than those based on the trial or the arguments of other jurors. *Harris v. State*, 263 Ga. 526, 528 (435 SE2d 669). The trial court was not required to accept the second verdict, but should have given instructions in the nature of an *Allen* charge. See *Romine v. State*, 256 Ga. 521, 526 (350 SE2d 446). These guilty verdicts must be reversed.

2. The trial court could have thrown light on the jury's dilemma about whether the defendant was "trapped," by explaining that the defense of entrapment is relevant where the defendant concedes that a crime was committed but contends he was "entrapped" into committing the crime (see *Finley v. State*, 214 Ga. App. 452, 453 (448 SE2d 78)); whereas, Howard contends he did not commit a crime and that his actions were consistent with innocence.

3. Appellant contends the State put his character in issue by Harper's testimony that she delivered cocaine to him on previous occasions. This enumeration is without merit. The State gave notice of intent to produce evidence of similar transactions according to *Williams v. State*, 261 Ga. 640 (409 SE2d 649). Moreover, this testimony did not have as its only probative value the implication that because of his bad character appellant was more likely to have committed this crime. It explained how Harper knew John Howard, his voice, and the location of his house, which tended to prove he was the intended recipient of the cocaine. See *Carroll v. State*, 155 Ga. App. 514 (2) (271 SE2d 650).

*Judgment reversed. Johnson and Smith, JJ., concur.*

DECIDED JULY 27, 1995 —
RECONSIDERATION DENIED AUGUST 15, 1995 —

*Martin H. Eaves*, for appellant.
*Richard E. Currie, District Attorney, Kathy L. Register, Alexander J. Markowich, Assistant District Attorneys*, for appellee.