**FIRST DIVISION**
**PHIPPS, C. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 16, 2013

# In the Court of Appeals of Georgia

A13A0703. DAVIS v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for aggravated sexual battery and child molestation, Albert Davis argues that the trial court erred when it failed to charge the jury on accident, when it closed the courtroom during the victim's testimony, and when it received an ex parte communication from a juror. Davis also argues that the statute of limitation had run before he was indicted for aggravated sexual battery, that he was deprived of his right to effective and conflict-free counsel, and that his sentence on the aggravated sexual battery count was illegal. We affirm Davis's conviction but vacate his sentence and remand for resentencing because the rule of lenity requires that he be resentenced under the lesser penalty prescribed by the version of OCGA § 16-6-22.2 in effect before July 1, 2006.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that in February 2010, the 13-year-old victim sent her cousin a number of text messages to the effect that Davis, her stepfather, had sexually abused her. When the cousin informed the Treutlen County sheriff of these messages, the sheriff went to the house the victim shared with her mother and Davis and saw the victim, who had just returned home from school, begin to cry. The victim's mother told the victim to go with the sheriff, "to tell the truth," and that "it would be all right." The sheriff drove the victim to the local courthouse and called in an agent from the Georgia Bureau of Investigation, who interviewed the victim in a judge's chambers. In the meantime, the sheriff called Davis and asked him to meet at the courthouse. When Davis arrived, he waived his Miranda rights and admitted that

2

he often bathed with the victim, during which occasions he sometimes touched her breasts, buttocks, and inner thighs; that he regularly went into her room naked in the morning to "wake her up"; and that he might have touched the victim inappropriately while carrying her to her bedroom a few years earlier. The sheriff then arrested Davis for child molestation.

The GBI agent's interview of the victim was played for the jury at trial. In the course of the interview, the victim stated that when she was between the ages of 7 and 13, Davis would sometimes come into her room naked and kiss her while touching himself; that Davis often washed her body while she bathed; that he had once inserted his finger in her vagina while carrying her from her mother's room, where she had fallen asleep, to her bedroom; and that he once told her to squat in the shower and then checked her private parts for ticks, during which time he inserted his finger in her vagina. At trial, and in addition to confirming these incidents, the victim also testified that Davis would come into her room, lie down on top of her, and try to kiss her on the mouth. During his own interview with the same GBI agent, Davis admitted to scratching his privates at times when he walked into the victim's room naked to awaken her in the morning, to showering with and touching the victim, and to searching her pubic hair for ticks.

Davis was charged with one count of aggravated sexual battery for penetrating the victim with his finger without her consent between December 18, 2004, and December 18, 2006. Davis was also charged with two counts of child molestation – the first for masturbating in the victim's presence between October 1, 2008, and February 4, 2010, and the second for fondling her breast and vagina between October 1, 2009, and February 4, 2010. A jury found Davis guilty of aggravated battery and the second count of child molestation, but acquitted him of the first child molestation charge. Davis was convicted and sentenced to 40 years to serve with life on probation on the aggravated sexual battery charge and 20 years with 10 to serve, running concurrently, on the child molestation charge.

1. We have reviewed the record and conclude that the evidence was sufficient to sustain Davis's conviction for aggravated sexual battery and child molestation. See OCGA §§ 16-6-22.2 (b) (defining aggravated sexual battery as the intentional penetration with a foreign object of "the sexual organ or anus of another person without the consent of that person"), 16-6-4 (a) (defining child molestation as doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person" committing the act); *Jackson*, supra.

4

2. Davis argues that the trial court erred when it failed to charge the jury on accident, which he characterizes on appeal as his sole defense to the charge of aggravated sexual battery. We disagree.

The record shows that Davis was charged with aggravated sexual battery in that he "did unlawfully and intentionally penetrate the sexual organ of [the victim] with . . . his finger" without the victim's consent. Davis told the sheriff and the GBI agent, however, that he was not sure or could not remember whether he had penetrated the victim in the course of carrying her from her mother's bedroom to her own, and he conceded to the victim's mother only that he might have touched the victim's privates.

"[I]f a defendant does not admit to committing any act which constitutes the offense charged, [he] is not entitled to a charge on the defense of accident." (Punctuation and footnote omitted.) *Sevostiyanova v. State*, 313 Ga. App. 729, 736 (9) (722 SE2d 333) (2012). Here, Davis admitted to carrying the victim and to touching her privates during that act of carrying, but not to the act of penetration that was the basis of the charge of aggravated sexual battery. Because Davis did not admit to the act of penetration that was the basis of the charge of aggravated sexual battery, he was not entitled to a jury charge on accident as an affirmative defense to that charge. See OCGA § 16-6-22.2 (b); *Sevostiyanova*, supra; compare *Jones v. State*, 161 Ga. App.

5

610, 612 (4) (288 SE2d 788) (1982) (physical precedent only) (where defendant admitted to penetrating victim's vagina with his finger, and where accident was his sole defense to a charge of child molestation, a trial court erred in not charging the jury on that defense).

3. Davis also argues that the trial court erred when it closed the courtroom and excluded Davis's family for the duration of the victim's testimony. We disagree.

The record shows that when the trial court asked both sides for alternatives to closure, Davis's counsel affirmatively agreed to the closure. At the hearing on his motion for new trial, Davis testified that although he immediately informed counsel that he wished to have his family present during the victim's testimony, counsel ignored this wish on the ground that the victim, whom he found a "very sympathetic witness," would likely be less defensive when not faced with those who had sided with Davis in this "very gut-wrenching, family-splitting incident."

OCGA § 17-8-54 provides that a trial court "shall clear the courtroom of all persons except parties . . . and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, and court reporters" when a person under the age of 16 testifies about a sex offense. See *Goldstein v. State*, 283 Ga. App. 1, 4 (2) (640 SE2d 599) (2006) (trial court's closure

6

of a courtroom during the testimony of a victim of a sex offense does not violate the accused's right to a public trial).

Even if the trial court erred by violating the terms of the statute when it excluded Davis's family from the courtroom for the duration of the victim's testimony, Davis has waived this issue by failing to object. *Sandifer v. State*, 318 Ga. App. 630, 631 (1) (734 SE2d 464) (2012). Moreover, even assuming that Davis had preserved this objection, the trial court's decision to remove Davis's family from the courtroom does not constitute reversible error because Davis has not shown how this error harmed him. Id. at 632 (1). Specifically, Davis's assertion of prejudice ignores the fact that his conviction was founded not only on the victims' trial testimony but also on his own inculpatory statements to the GBI. In light of this evidence, we cannot say that Davis "was prejudiced by the fact that the trial court may have made it easier for the young victim[ ] to testify by removing all spectators, other than their immediate family members, from the courtroom." Id. at 632 (1); see also *Driggers v. State*, 295 Ga. App. 711, 716-717 (3) (673 SE2d 95) (2009).

To the extent that Davis is suggesting that counsel was ineffective when he agreed to the closure, the Supreme Court of Georgia has held that even assuming that counsel could have raised a meritorious objection to a courtroom closure, a defendant

7

"still must show that he was prejudiced by counsel's decision not to object" to that closure. (Citations omitted.) *Reid v. State*, 286 Ga. 484, 487 (3) (c) (690 SE2d 177) (2010); compare *Presley v. Georgia*, 558 U. S. 209, 214 (130 SCt 721, 175 LE2d 675) (2010) (trial court was "required to consider alternatives to closure even when they are not offered by the parties") (citation omitted).[1] In light of the other evidence against him noted above, Davis can make no such showing here. *Sandifer*, supra at 632 (2) (where victims' testimony was not the only evidence against him, defendant could not show prejudice resulting from the trial court's exclusion of defendant's sister from the courtroom during the testimony of the victim). For both of these reasons, Davis's contention lacks merit.

4. Davis also argues that he was deprived of his due process right to be present and to see and hear all proceedings against him when the trial court received a communication from a juror that the juror had a final examination on the day after he was empaneled. Again, we disagree.

Although ex parte communications are presumptively harmful, we will not consider the issue when a party does not raise it at the first opportunity. See *Ga.*

---

[1] Although Davis asks us to reject the Supreme Court's decision in *Reid* and to find reversible error without a showing of prejudice, we have no authority to do so.

8

*Power Co. v. Ga. Pub. Serv. Comm.*, 196 Ga. App. 572-573 (1) (396 SE2d 562) (1990) (complaint of ex parte communication had been waived on appeal when party did not raise the issue at the first opportunity); *In the Interest of D. D.*, 310 Ga. App. 329, 332-333 (2) (713 SE2d 440) (2011) (remanding for determination whether party waived issue of ex parte communication by failing to raise it below).

This record shows that the trial court informed the parties of this communication, including the court's suggestion that the juror call his instructor to obtain an alternate date for the examination, and that neither side had any objection to this disposition of the matter. It follows that Davis has waived any issue concerning this ex parte communication. See *Ga. Power Co.*, supra at 572-573 (1).

5. Davis also argues that his conviction for aggravated sexual battery must be set aside because he was not indicted for the crime within four years of its occurrence and because the indictment did not invoke the seven-year statute of limitations as to victims under the age of 18. See OCGA § 17-3-1 (c); *Moss v. State*, 220 Ga. App. 150 (469 SE2d 325) (1996) (trial court did not err in directing a verdict of acquittal when State failed to initiate prosecution within the four years provided by OCGA § 17-3-1 (c) and when the indictment failed to allege the seven-year exception in the same statute). Under OCGA § 17-3-1 (b), however, a seven-year statute of limitation also

9

applies to offenses punishable by life imprisonment, which category includes aggravated sexual battery. See OCGA §§ 16-6-22.2 (b) (authorizing life imprisonment for the crime of aggravated sexual battery), 17-3-1 (b) (except as provided in OCGA §§ 17-3-1 (d) [as to crimes involving DNA evidence] and 17-3-2.1 (a) [as to crimes not including aggravated sexual battery committed between 1992 and 2012], "prosecution for other crimes punishable by death or life imprisonment shall be commenced within seven years after the commission of the crime."). Davis's contention that the four-year limitation period applies thus lacks merit.

6. Davis argues that (a) the trial court erred when it instructed the jury that it "need[ed]" to reach a verdict and that (b) counsel was ineffective when he failed to object to the trial court's initial charge or to request an *Allen* charge later in the proceedings. We disagree.

(a) In reviewing a trial court's instructions to a jury as to the desirability of reaching a verdict, we must answer the question "'whether the instruction is so coercive as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors.'" *Burchette v. State*, 278 Ga. 1, 3 (596 SE2d 162) (2004), quoting *Mayfield v. State*, 276 Ga. 324, 330 (578 SE2d 438) (2003).

10

The record shows that before the trial court sent the jury out to begin its deliberations, the court noted that members of the jury "should never surrender an honest opinion in order to be congenial or just to reach a verdict because [of] the opinions of the other jurors" and that "[y]ou will need to find [Davis] either guilty or not guilty" as to each of the three counts. The jury began its deliberations at 2:30 p.m.

During the same afternoon, the jury sent a note that it was hung on the aggravated sexual battery count. Davis's counsel then asked whether the court was in the habit of giving *Allen* charges as to the desirability of reaching a verdict. After the State recommended against an *Allen* charge, the trial court sent a response that the jury should "[p]lease continue to deliberate until you are able to reach a verdict." That evening, and on a report from the bailiff that tempers were "getting pretty hot" in the jury room, the trial court brought the jury back into the courtroom and granted a break until the following morning, commenting that "we want you to ultimately reach a decision one way or the other," and that "hopefully, you can reach a verdict if we allow you to come back in the morning." A few minutes after deliberations commenced the following morning, the jury returned its verdict. In a poll, each juror affirmed that the verdict had been reached "freely and voluntarily."

11

Although it is true that the trial court told the jury that it "need[ed]" to reach a verdict, the record also shows that moments before making this suggestion, the trial court also instructed that no juror should surrender his or her convictions for the sake of reaching a verdict. We therefore conclude that this instruction, taken as a whole, was not coercive. See *Dortch v. State*, 204 Ga. App. 822, 823 (3) (420 SE2d 778) (1992) (even when a jury charge included disapproved language that a criminal indictment would have "to be determined by some jury at some time," the charge was not coercive when it included the instruction that no juror should "give up honestly held convictions"). As to the trial court's decision not to give an *Allen* charge after the jury sent out a note that it was hung on the aggravated sexual battery count, a trial court does not abuse its discretion in failing to give an *Allen* charge sua sponte when it has previously told the jury that none of its members should surrender an honest opinion as to the case. *Ponder v. State*, 268 Ga. 544, 546 (491 SE2d 363) (1997); compare *Howard v. State*, 218 Ga. App. 346, 348-350 (1) (461 SE2d 274) (1995) (granting new trial when trial court made repeated comments including that "we're not going to mistry this case," leading the jury to believe it was required to reach a verdict).

(b) Given that the trial court's initial charge to the jury was not erroneous, Davis cannot show that trial counsel was ineffective for failing to object to that charge. *Sims v. State*, 281 Ga. 541, 543-544 (2) (640 SE2d 260) (2007) (failure to raise a meritless objection cannot constitute ineffective assistance of counsel). As to counsel's failure to request an *Allen* charge later in the proceedings, Davis has not pointed to any evidence at the new trial hearing "as to counsel's reasons for not requesting any further jury instructions." *Cantu v. State*, 304 Ga. App. 655, 658-659 (2) (b) (697 SE2d 310) (2010). We therefore presume that counsel's decision not to request an *Allen* charge was strategic. Id.

For both of these reasons, the trial court did not err when it denied Davis's motion for new trial on this ground.

7. Davis also argues that counsel was ineffective due to an actual conflict arising from his representation of the Department of Family and Children's Services (DFCS) during the same period in which DFCS was involved in the placement of Davis's own children pending a law enforcement investigation of the victim's allegation that she was pregnant with Davis's child. We disagree for two reasons: because the trial court did not clearly err when it held that Davis waived any conflict,

13

and because counsel's decision not to impeach the victim's credibility on the subject of the pregnancy allegation was both strategic and reasonable.

> Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. *Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. . . .* Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.

(Footnotes omitted; emphasis supplied.) *Cuyler v. Sullivan*, 446 U. S. 335, 346 (IV) (A) (100 SCt 1708, 64 LE2d 333) (1980). Our Supreme Court has recently confirmed that "a defendant asserting ineffective assistance of counsel based on an actual conflict of interest must demonstrate that the conflict of interest existed *and* that it significantly affected counsel's performance." (Citation and punctuation omitted; emphasis supplied; citation and punctuation omitted.) *State v. Abernathy*, 289 Ga. 603, 604 (1) (715 SE2d 48) (2011); see also *Cuyler*, supra at 348 (IV) (B) (when a defendant raises no objection to an alleged conflict during trial, he must demonstrate on appeal both the existence of an actual conflict and its significant effect on counsel's

14

performance); *Taylor v. State*, 320 Ga. App. 596, 602-603 (2) (740 SE2d 327) (2013) (same, citing *Abernathy* and *Cuyler*).

At the hearing on Davis's motion for new trial, counsel testified that at the time he was representing Davis, he was also a special assistant attorney general representing DFCS. In the course of discovery, the victim was found to have alleged that she was pregnant by Davis, but a subsequent DFCS investigation, including a physical examination, showed no evidence of any pregnancy. Counsel did not introduce this evidence at trial.

Davis's mother testified that she had retained her son's trial counsel because she had worked for said counsel and trusted him; that she knew trial counsel was representing DFCS in this same period; and that she knew of no connection between or conflict arising from trial counsel's representation of her son and trial counsel's work for DFCS. Over the course of her son's trial, however, Davis's mother came to believe that counsel should have questioned the victim more aggressively and should have introduced the topic of the victim's disproved allegation of pregnancy.

(a) This record shows that counsel discussed his dual representation of Davis and DFCS with Davis and his wife and that the dual representation had no effect on any decision he took at trial, including his decision not to introduce evidence of the

15

victim's pregnancy allegation for purposes of impeaching her. In light of this record, including counsel's account of his discussion of the issue with Davis and his wife, we cannot say that the trial court clearly erred when it concluded that Davis waived any conflict. *Taylor*, supra at 604 (2) (a) (where defendant waived any conflicts arising from counsel's prior and simultaneous representation of defendant and her co-defendant, any error in allowing a trial to proceed was induced and could not provide the basis for a claim that counsel was ineffective as a result of the conflict).

(b) As we have recently repeated in the specific context of allegations as to conflicts arising from counsel's simultaneous representation of two different clients, "which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client, and whether an attorney's trial tactics are reasonable is a question of law, not fact." (Citation and punctuation omitted.) *Taylor*, supra at 604 (2) (b). Here, counsel testified that his representation of DFCS amounted to only a potential conflict, and his strategic decision not to impeach the victim's credibility by means of the false pregnancy accusation was a reasonable one. Thus Davis has not shown that any actual conflict between his and DFCS' interests "caused divided loyalties" or "compromised" trial counsel's representation of him. Id., quoting *Abernathy*, supra at 605 (1); see also *Johnson v.*

16

*State*, 320 Ga. App. 161, 166 (4) (739 SE2d 469) (2013) (where counsel testified that he had not shared any information that would have affected his ability to represent a criminal defendant with other attorneys in his office who represented the victims in other matters, the defendant could show neither an actual conflict nor any adverse effect on counsel's representation of him). The trial court did not clearly err when it denied Davis's motion for new trial on this ground.

8. Davis also argues that because the dates charged in the indictment for aggravated sexual battery span from December 2004 through December 2006, he should have been sentenced under the rule of lenity to the 10- to 20-year period provided by the version of OCGA § 16-6-22.2 (c) in effect before July 1, 2006, rather than the 25-year-to-life period provided by the same statute as effective July 1, 2006.[2] We agree.

This record contains some evidence that Davis inserted his finger into the victim's vagina on two occasions: while carrying her in 2006, when she was nine years old, which includes not only the six-month period from January 2006 to July 1, 2006, but also the five-month period from July 1, 2006, to the victim's tenth birthday in December 2006; and while checking her for ticks in January 2010.

---

[2] For the 2006 revisions of the statute, see Ga. L. 2006, p. 379, § 16.

17

The single aggravated sexual battery count before us "covers *any offense of the nature charged within the period of limitation*, including the dates alleged," such that "the State is not confined to proof of a single transaction, but may prove or attempt to prove any number of transactions of the nature charged within the period." (Citation and punctuation omitted; emphasis supplied.) *Bowman v. State*, 184 Ga. App. 197 (2) (361 SE2d 58) (1987).

> Where, as here, the State alleges a certain range of dates in an indictment and does not specifically allege that those dates are material, the State is not restricted at trial to proving that the crimes occurred within that range of dates. *State v. Layman*, 279 Ga. 340, 341 (613 SE2d 639) (2005). "And, if there is a variation between the date alleged and the date proved at trial, the variance does not entitle a defendant to a new trial unless it prejudiced the defense." *State v. Layman*, supra.

*Adams v. State*, 288 Ga. 695, 698 (2) (707 SE2d 359) (2011).

Our analysis does not end here, however, as we must also consider the rule of lenity in light of the 2006 change to the sentence imposed under OCGA § 16-6-22.2 (c) and the verdict as rendered.

> "The rule of lenity applies where two or more statutes prohibit the same conduct while differing only 'with respect to their prescribed punishments.' *Dixon v. State*, 278 Ga. 4, 7 (1) (d) (596 SE2d 147) (2004). According to the rule, 'where any uncertainty develops as to

18

which penal clause is applicable, the accused is entitled to have the lesser of the two penalties administered.' *Brown v. State*, 276 Ga. 606, 608-609 (2) (581 SE2d 35) (2003)."

*Daniels v. State*, 320 Ga. App. 340, 344 (3) (739 SE2d 773) (2013), quoting *White v.State*, 319 Ga. App. 530, 532 (2) (737 SE2d 324) (2013).

Here, we cannot determine from the general verdict form the date of the act upon which the jury pronounced guilt – that is, whether it found Davis guilty of an act committed before July 1, 2006, or guilty of an act committed after that date. Thus, under the rule of lenity, Davis "cannot be given the higher sentence" imposed for the offense of aggravated sexual battery by the version of OCGA § 16-6-22.2 (c) applicable after July 1, 2006. *Daniels*, supra at 344 (3). We therefore vacate Davis's sentence and remand this case for resentencing under the version of OCGA § 16-6-22.2 (c) in effect between 2004 and July 1, 2006. Id. at 344-345 (4) (vacating and remanding for resentencing where the dates alleged in separate charges of molestation occurring both before and after July 1, 2006, were not material elements of the charges, thus "blurring the distinction between the counts alleging crimes before July 1, 2006, and those alleging crimes on or after that date").

*Judgment vacated and case remanded for resentencing. Phipps, C. J., and Miller J., concur in divisions 1, 2, 5, and 8, and in the judgment.*