313 Ga. 521
FINAL COPY

S21G0112.  ALEXANDER v. THE STATE.

BETHEL, Justice.

A Banks County jury found Stephen Alexander guilty of several sexual offenses against his stepdaughters, both of whom were minors during Alexander's trial. At trial, the two victims and a child advocate testified in a courtroom that was partially closed to spectators at the direction of the trial court.

As discussed below, the improper closure of a courtroom is considered a "structural" error that results in reversal of a defendant's conviction on direct appeal if the error was committed over objection. Alexander's trial counsel, however, did not object. Thus, this case involves a criminal defendant who is seeking to challenge the closure of a courtroom solely through a Sixth Amendment claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d

674) (1984).

Relying on this Court's decision in *Reid v. State*, 286 Ga. 484, 488 (3) (c) (690 SE2d 177) (2010), the trial court and the Court of Appeals determined that the proper *Strickland* analysis requires a defendant in this posture to demonstrate actual prejudice to prevail and rejected Alexander's claim of ineffective assistance of counsel for failure to show any such prejudice. See *Alexander v. State*, 356 Ga. App. 392, 394-395 (2) (a) (847 SE2d 383) (2020). Alexander maintains that post-*Reid* authority from the Supreme Court of the United States requires a different analysis, see *Weaver v. Massachusetts*, — U. S. — (137 SCt 1899, 198 LE2d 420) (2017), and urges us to revisit the question of what a defendant must demonstrate when challenging a courtroom closure through a claim of ineffective assistance of counsel. We granted certiorari to determine the soundness of *Reid* in light of *Weaver*.

Although *Weaver* discussed a "fundamental unfairness" test as a potential alternative to demonstrating prejudice arising from counsel's failure to object to a courtroom closure, the United States

Supreme Court neither adopted that test in *Weaver* nor held that such a test was satisfied in the case before it. In short, *Weaver*'s discussion of a fundamental unfairness test was merely dicta, and it created no binding Sixth Amendment precedent. Moreover, we view our decision in *Reid* as a faithful application of *Strickland* and its requirement that the defendant demonstrate a reasonable probability that an alleged error by counsel affected the outcome of his trial. Thus, as discussed more fully below, we adhere to the holding of *Reid* that a showing of actual prejudice is required to establish a claim of ineffective assistance of counsel arising from the failure to object to a courtroom closure and affirm.

### 1. *Factual Background*

We briefly recount facts of this case that are relevant to the issue before us. Alexander was charged with multiple sexual offenses against his two stepdaughters, both of whom were under the age of 16 at the time of Alexander's trial. Before trial, the State requested that the "courtroom be cleared" during the victims' testimony without stating any grounds for this request. Alexander's

counsel replied, "I certainly don't oppose that. I think it would be appropriate." The trial court immediately announced that the courtroom gallery would be cleared when those witnesses testified. The prosecutor then informed the trial court that the victims requested that their uncle be permitted to remain in the courtroom during their testimony. After the uncle was identified in the courtroom gallery, the trial court replied, "Okay. All right."

After opening statements, the trial court excused the jury and then announced, "I am going to, on request from counsel from both sides, go ahead and ask that the gallery be cleared, except for the uncle, and we'll go from there." The older victim testified first, followed by the child advocate who had interviewed her after she disclosed the abuse. Then the younger victim testified. During the testimony of these three witnesses, the courtroom's gallery was cleared of all spectators except the victims' uncle. Alexander's parents were among those who were asked to leave the courtroom.[1]

---

[1] Alexander testified at the hearing on his motion for new trial that he thought other members of his family — including his sister, brother, and son

The victims testified at length about a years-long history of sexual abuse by Alexander. The child advocate, who was qualified as an expert in forensic interviewing and child sexual abuse, testified generally about the process of conducting forensic interviews of suspected victims of child sexual abuse and specifically about his interview of the older victim after she disclosed the abuse. An audio and video recording of the interview was admitted during the advocate's testimony and played for the jury. The advocate testified that, based on his experience, it was his opinion that the older victim's "disclosure and interview are consistent with a child who's experienced sexual abuse."

After the testimony of the younger victim, the spectators who had been asked to leave the gallery were invited back into the courtroom.[2] The remaining witnesses for the State and defense

— were present and had been asked to leave the courtroom but that he was "not sure."

[2] The trial court stated, "I know we had cleared the gallery. . . . Well, they're welcome to come back in. . . . [T]hose who were in the gallery, if they want to come back in, then they can come back in." Later, at the close of the day's proceedings, the trial court stated the following on the record:

testified with the courtroom open.[3] The jury ultimately found Alexander guilty of multiple counts of rape, statutory rape, aggravated child molestation, aggravated sexual battery, incest, and false imprisonment, and the trial court sentenced him to serve life

---

I do want to perfect the record with respect to one other matter. It becomes a little sensitive from time to time. Let me just pull this out. You know, this is one of those cases where there can be an exception to one of the major rules that we hold near and dear to criminal cases, criminal trials, and that is open courtrooms. And, of course, we had here — in this case we had witnesses who were under the age of 16, who were called upon to testify — two of them, and by agreement of counsel, we invited the folks in the gallery to leave for those witnesses. The Court had absolutely no intention to require anyone to remain outside of the courtroom beyond those two witnesses, as the statute suggests and requires, really, and frankly was unaware as to whether there were still folks here. But I do want to point out that the Court certainly had no intention of preventing anyone from — who otherwise could be in the gallery from being in the gallery. And I would ask — and I don't know what remains or if there's a possibility that anyone might be recalled, especially some of these witnesses who are minors, but I would ask that counsel, and for that matter court security officers, just assist the Court to make sure that the courtroom is not inadvertently closed off to the public, who have a right to be here.

[3] The State called seven additional witnesses: a forensic biologist from the GBI, a different child advocate (who was also admitted as an expert in forensic interviewing and child sexual abuse) who had interviewed the younger victim, the victims' mother (Alexander's former wife), two investigators from the Banks County Sheriff's Office, a digital forensic investigator from the GBI, and a sexual assault nurse examiner. The defense presented the testimony of four witnesses: a co-worker of the victims' mother, one of the investigators called by the State, a medical doctor who specialized in forensic pathology, and Alexander.

in prison without the possibility of parole plus 125 years.

Alexander thereafter moved for a new trial. At the hearing on the motion, Alexander testified that he asked one of his trial attorneys why his family members had to leave the courtroom. Alexander testified that his attorney said "We'll check into it." Alexander testified that he wanted his family members to be in the courtroom and did not want them to be removed. Alexander also testified that his mother and father, who were asked to leave the courtroom, had "a good relationship" with the victims and that he believed their presence in the courtroom "would have helped maybe get the truth out."

One of Alexander's trial attorneys likewise testified that "[Alexander] wanted his family to be in the courtroom at all times." Counsel explained that he "should have objected to [the partial closure] because . . . I knew then and I know now what the law is and I should have objected, but I did not." Counsel also testified that there was no strategic reason to withhold an objection and that "[i]t just did not occur to [him]."

Relying on this Court's decision in *Reid*, the trial court rejected Alexander's claim of ineffective assistance arising from the failure to object to the partial courtroom closure. Alexander appealed, but, also relying on *Reid*, the Court of Appeals affirmed that ruling. See *Alexander*, 356 Ga. App. at 394-395 (2) (a). We granted Alexander's petition for a writ of certiorari.[4]

2. *The Right to a Public Trial, Structural Error, and Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution provides that "the accused shall enjoy the right to a . . . public trial[.]" Before excluding the public from any stage of a criminal trial, the party seeking to close the courtroom "must advance an overriding interest that is likely to be prejudiced" if the courtroom remains open. (Citation and punctuation omitted.) *Presley v. Georgia*, 558 U. S. 209, 214 (130 SCt 721, 175 LE2d 675) (2010). In addition, "the closure must be no broader than necessary to protect that interest," and "the trial court must consider reasonable alternatives" to the

---

[4] The Court of Appeals also rejected other claims raised by Alexander. He did not seek this Court's review of those issues, and we do not address them.

closure, even "when they are not offered by the parties." (Citation and punctuation omitted.) Id. The trial court "must make findings adequate to support the closure." (Citation and punctuation omitted.) Id. The Sixth Amendment right to a public trial is applicable to the states. See *Purvis v. State*, 288 Ga. 865, 866 (1) (708 SE2d 283) (2011).

The Georgia Constitution also limits the authority of the trial court to close a courtroom. Article I, Section I, Paragraph XI (a) provides that, in criminal cases, the defendant "shall have a public . . . trial[.]" As we discussed in *Purvis*,

> Georgia law regarding the public aspect of hearings in criminal cases is more protective of the concept of open courtrooms than federal law. Our state [C]onstitution point-blankly states that criminal trials *shall* be public. We see no friction between these state and federal constitutional provisions, properly interpreted, since the objectives of both are identical: access to judicial hearings for the public and fair trials for criminal defendants.

(Citation and punctuation omitted; emphasis in original.) Id. at 866 (1).

Georgia statutory law mandates the partial closure of a

courtroom when a person under the age of 16 testifies in a criminal case concerning a sexual offense, although the statute permits certain individuals, including the defendant's immediate family members, to remain in the courtroom. See OCGA § 17-8-54;[5] see also *Scott v. State*, 306 Ga. 507, 513 (832 SE2d 426) (2019) (Peterson, J., concurring) (noting that OCGA § 17-8-54 imposes a mandatory closure rule and discussing concerns about the constitutionality of such a rule).[6]

Here, Alexander argues that his counsel performed deficiently by failing to object to the trial court's partial closure of the courtroom. He argues that the partial closure deprived him of his public-trial right under the Sixth Amendment when the trial court

---

[5] OCGA § 17-8-54 provides:

In the trial of any criminal case, when any person under the age of 16 is testifying concerning any sexual offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, victim assistance coordinators, victims' advocates, and such other victim assistance personnel as provided for by Code Section 15-18-14.2, jurors, newspaper reporters or broadcasters, and court reporters.

[6] No issue regarding the constitutionality of OCGA § 17-8-54 is presented in this case.

failed to conduct any inquiry or make any findings pursuant to *Presley* regarding the interests to be advanced by the closure, whether the closure was broader than necessary to advance those interests, and whether there were alternatives to closure. See *Weaver*, 137 SCt at 1909 (II) (B) (noting that a public-trial violation can occur "simply because the trial court omits to make the proper findings before closing the courtroom, even if those findings might have been fully supported by the evidence" (citing *Presley*, 558 U. S. at 215)); *Jackson v. State*, 339 Ga. App. 313, 319 (2) (b) (793 SE2d 201) (2016) (holding that the closure of the courtroom in that case "did not comply with [federal] constitutional requirements because the trial court made no findings adequate to support the closure, including a consideration of reasonable alternatives").

Moreover, Alexander argues, had his trial counsel objected to the partial closure and had the objection been overruled, Alexander would have been entitled to have his convictions reversed on direct appeal without the need to show actual harm because a courtroom closure during witness testimony in violation of a defendant's right

11

to a public trial under the Sixth Amendment is a "structural" error.

See *Reid*, 286 Ga. at 488 (3) (c).

> Structural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. As such, structural errors are not subject to harmless error analysis [when properly raised at trial and on direct appeal].

(Citations and punctuation omitted.) *Berry v. State*, 282 Ga. 376, 378 (3) (651 SE2d 1) (2007).[7]

When no objection to an alleged error is raised at trial and the error is raised only through a claim of ineffective assistance of counsel, however, *Strickland* ordinarily requires the defendant to show not only that his counsel performed deficiently by not objecting but also that the deficiency caused prejudice, meaning a reasonable probability that, but for the deficiency, the outcome of the trial would have been different. See *Strickland*, 466 U. S. at 694 (III) (B). Applying *Strickland*, this Court held in *Reid* that even when a

---

[7] Alexander also argues that the partial closure of the courtroom violated OCGA § 17-8-54 and his right to a public trial under the Georgia Constitution. But Alexander makes no argument that a different test applies to claims of ineffective assistance of counsel arising from the failure to object to a courtroom closure on those grounds, so we do not analyze that question further.

courtroom closure would necessitate reversal had an objection been preserved, in order to satisfy the prejudice prong of the *Strickland* test, the defendant is required to demonstrate a reasonable probability that the outcome of the trial would have been different had his counsel objected to the closure. See *Reid*, 286 Ga. at 487-489 (3) (c).

In *Reid*, the trial court temporarily closed the courtroom for the trial testimony of two witnesses. See id. at 487 (3) (c). The defendant did not object but later challenged the courtroom closure through a claim of ineffective assistance of counsel. See id. In reviewing the defendant's claim, this Court stated that, assuming the failure to object constituted deficient performance, the defendant "still must show that he was prejudiced by counsel's decision not to object to the brief closing of the courtroom. . . . [P]rejudice will not be presumed." Id. at 487-488 (3) (c). Thus, this Court stated that even though "[t]he improper closing of a courtroom is a structural error requiring reversal . . . if the defendant properly objected at trial and raised the issue on direct appeal," when challenged in the context of a claim of

ineffective assistance of counsel, the defendant "must prove a reasonable probability of a different result" had counsel objected. (Citation and punctuation omitted.) Id. at 488 (3) (c). Because the defendant in *Reid* had not done so, his claim of ineffective assistance failed. See id. at 488-489 (3) (c).[8]

As noted previously, both the trial court and the Court of Appeals relied on *Reid* in denying Alexander's claim of ineffective assistance. See *Alexander*, 356 Ga. App. at 394-395 (2) (a). Alexander argues that, despite *Reid*, *Weaver* allows him to establish

---

[8] This Court and the Court of Appeals have applied *Reid* in the context of claims of ineffective assistance of counsel arising from the failure to object to courtroom closures occurring at various stages of trial proceedings, including during jury selection, witness testimony at trial, closing arguments, the trial court's final charge to the jury, and witness testimony at a sentencing hearing. See, e.g., *Morris v. State*, 308 Ga. 520, 530-531 (6) (842 SE2d 45) (2020) (closure of courtroom during trial court's final charge to jury); *Walker v. State*, 308 Ga. 33, 41 (3) (c) (838 SE2d 792) (2020) (closure of courtroom during closing argument and final jury charge); *Benson v. State*, 294 Ga. 618, 622 (3) (a) (754 SE2d 23) (2014) (closure of courtroom during jury voir dire); *State v. Abernathy*, 289 Ga. 603, 609-611 (5) (715 SE2d 48) (2011) (jury voir dire conducted partially in private room); *Whatley v. State*, 342 Ga. App. 796, 801-804 (3) (b) (805 SE2d 599) (2017) (exclusion of public from courtroom during jury selection); *Freeman v. State*, 328 Ga. App. 756, 760-761 (4) (760 SE2d 708) (2014) (closure of courtroom during witness testimony at sentencing hearing); *Davis v. State*, 323 Ga. App. 266, 269-270 (3) (746 SE2d 890) (2013) (defendant's family excluded from courtroom during victim's testimony).

14

his claim of ineffective assistance by showing that his counsel's failure to object to the partial courtroom closure rendered his trial fundamentally unfair. We turn now to that question.

3. *The Scope and Applicability of Weaver*

*Weaver* involved a criminal case in Massachusetts in which "the courtroom was occupied by potential jurors and closed to the public for two days of the jury selection process." 137 SCt at 1905.[9] "Defense counsel neither objected to the closure at trial nor raised

---

[9] As the United States Supreme Court detailed:

> The pool of potential jury members was large, some 60 to 100 people. The assigned courtroom could accommodate only 50 or 60 in the courtroom seating. As a result, the trial judge brought all potential jurors into the courtroom so that he could introduce the case and ask certain preliminary questions of the entire venire panel. Many of the potential jurors did not have seats and had to stand in the courtroom. After the preliminary questions, the potential jurors who had been standing were moved outside the courtroom to wait during the individual questioning of the other potential jurors. The judge acknowledged that the hallway was not "the most comfortable place to wait" and thanked the potential jurors for their patience. The judge noted that there was simply not space in the courtroom for everybody. As all of the seats in the courtroom were occupied by the venire panel, an officer of the court excluded from the courtroom any member of the public who was not a potential juror. So when petitioner's mother and her minister came to the courtroom to observe the two days of jury selection, they were turned away.

*Weaver*, 137 SCt at 1906 (I).

15

the issue on direct review." Id. at 1905.[10] The Court noted that *Weaver* came before the court "on the assumption that, in failing to object, defense counsel provided ineffective assistance." Id.

The Court suggested, however, that a defendant's failure to demonstrate a reasonable probability that the lack of objection to the courtroom closure affected the outcome of his trial might not always be fatal to his claim of ineffective assistance of counsel. The Court recognized a disagreement among federal courts of appeal and state courts of last resort about whether a defendant must demonstrate prejudice in a case in which an objection to a structural error is not preserved. See *Weaver*, 137 SCt at 1907 (I). The Court explained that "[s]ome courts have held that when a defendant shows that his attorney unreasonably failed to object to a structural error, the defendant is entitled to a new trial without further

---

[10] The Court noted that "in the case of a structural error where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to automatic reversal regardless of the error's actual effect on the outcome." (Citation and punctuation omitted.) *Weaver*, 137 SCt at 1910 (III). However, the Court noted the critical distinction between a case in which the claim was properly preserved as error and raised on direct appeal and a case like *Weaver* in which there was no objection at trial and the error is raised only through a claim of ineffective assistance of counsel. See id.

inquiry," whereas other courts, including this Court in *Reid*, "have held that the defendant is entitled to relief only if he or she can show prejudice." Id. (citing *Reid*, among other cases). The Court noted that it granted certiorari in *Weaver* "to resolve that disagreement" but would do so "specifically and only in the context of trial counsel's failure to object to the closure of the courtroom during jury selection," which is the stage of the proceedings at which the closure occurred in that case. Id.

The Court recognized that under *Strickland*, a defendant generally must show that his counsel's deficient performance prejudiced him in that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," but noted *Strickland*'s caution that the prejudice inquiry should not be applied in a "'mechanical'" fashion and that claims of ineffective assistance must ultimately concentrate on "'the fundamental fairness of the proceeding.'" *Weaver*, 137 SCt at 1911 (III) (quoting *Strickland*, 466 U. S. at 694 (III) (B), 696 (IV)).

The Court said that Weaver therefore argued that, "even if there is no showing of a reasonable probability of a different outcome, relief still must be granted if the convicted person shows that attorney errors rendered the trial fundamentally unfair." *Weaver*, 137 SCt at 1911 (III). Without deciding whether Weaver's proposed alternative way of showing prejudice was an appropriate test, the Court "assume[d]" for "analytical purposes of this case" that Weaver's interpretation of *Strickland* was correct, emphasizing that "[i]n light of the Court's ultimate holding, . . . the Court need not decide that question here." Id. Thus, the rest of the discussion in *Weaver* regarding a "fundamental unfairness" test was plainly dicta — application of a legal standard that the Court merely assumed and explicitly did not adopt, as two Justices who joined the Court's opinion expressly noted. See id. at 1914 (Thomas, J., concurring, joined by Gorsuch, J.) ("*Strickland* did not hold, as the Court assumes, that a defendant may establish prejudice by showing that his counsel's errors rendered the trial fundamentally unfair. Because the Court concludes that the closure during petitioner's

jury selection did not lead to fundamental unfairness in any event, no part of the discussion about fundamental unfairness is necessary to its result." (citations and punctuation omitted)); see also *Ordonez Azmen v. Barr*, 965 F3d 128, 133 (2d Cir. 2020) (explaining that "assumptions [regarding legal issues] are mere dicta" (punctuation omitted)); 3 Wayne LaFave, Criminal Procedure § 11.10 (d) (4th ed. 2021) (noting that *Weaver*'s statements about "fundamental unfairness" were dicta). And "dicta is not binding on anyone for any purpose." *Edwards v. Prime, Inc.*, 602 F3d 1276, 1298 (V) (C) (11th Cir. 2010).

> This dicta began with the Court noting that
>
> not every public-trial violation will in fact lead to a fundamentally unfair trial. Nor can it be said that the failure to object to a public-trial violation always deprives the defendant of a reasonable probability of a different outcome. Thus, when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.

19

(Citations omitted.) *Weaver*, 137 SCt at 1911 (III).

Applying that assumed standard, the Court first held that Weaver had not shown "prejudice in the ordinary sense, i.e., a reasonable probability that the jury would not have convicted him if his attorney had objected to the closure." *Weaver*, 137 SCt at 1912 (IV). The Court noted that it was "possible that potential jurors might have behaved differently if [Weaver's] family had been present" and that "the presence of the public might have had some bearing on juror reaction." Id. However, the Court noted that Weaver "offered no evidence or legal argument establishing prejudice in the sense of a reasonable probability of a different outcome but for counsel's failure to object." (Citation and punctuation omitted.) Id. at 1912-1913 (IV).

The Court then suggested that

[i]n other circumstances a different result might obtain. If, for instance, defense counsel errs in failing to object when the government's main witness testifies in secret, then the defendant might be able to show prejudice with little more detail. Even in those circumstances, however, the burden would remain on the defendant to make the prejudice showing, because a public-trial violation does

20

not always lead to a fundamentally unfair trial.

(Citations omitted.) *Weaver*, 137 SCt at 1913 (IV). The Court ultimately determined — "[i]n light of [its] assumption that prejudice can be shown by a demonstration of fundamental unfairness" — that Weaver had failed to show that his counsel's deficient performance had rendered the trial fundamentally unfair. Id.

As this recounting of *Weaver* shows, despite the Supreme Court's theorizing about how a defendant might establish a claim of ineffective assistance of counsel in the context of a courtroom closure, neither the test assumed in *Weaver*, nor anything else stated in *Weaver* about it, is binding upon this Court. In addition, nothing in *Weaver* displaced our holding in *Reid* that a showing of actual prejudice is required in order to establish a claim of ineffective assistance arising from trial counsel's failure to object to a courtroom closure.

4. *We Adhere to Reid*

Alexander urges this Court to adopt the test assumed in

21

*Weaver* and, in a supplemental brief filed after oral argument, asks us to overrule *Reid*. He contends that he could establish his claim of ineffective assistance of counsel based on a showing of fundamental unfairness without demonstrating a reasonable probability of a different outcome. However, as noted above, *Weaver* did not actually establish any new test for evaluating claims of ineffective assistance of counsel, and there are sound reasons to continue applying *Reid*'s holding to such claims. Thus, as we discuss below, we adhere to *Reid* and reject any application of the test assumed in *Weaver* to this case.

We have cited *Weaver* in only one case addressing a defendant's claim of ineffective assistance arising from a courtroom closure. See *Walker v. State*, 308 Ga. 33, 41 (3) (c) (838 SE2d 792) (2020). In *Walker*, the trial court ordered that spectators not be permitted to move in and out of the courtroom during closing arguments and the final jury charge. See id. Trial counsel failed to object, and the defendant argued that the failure constituted ineffective assistance under *Strickland*. See id. We concluded that the claim failed under both *Reid* and *Weaver*'s assumed test because the defendant had

22

"not shown that the trial court's order rendered his trial fundamentally unfair or that it somehow altered the outcome of trial." Id. Although our holding might suggest that a defendant could establish a claim of ineffective assistance through a showing of fundamental unfairness, we never analyzed or adopted that test; instead, like the Supreme Court in *Weaver*, we simply determined that the defendant failed to satisfy that test, if it even applied at all. See id.

We see no reason for the dicta in *Weaver* to disturb this Court's square holding in *Reid* regarding claims of ineffective assistance arising from the failure to object to a courtroom closure. We are mindful that "dicta from the Supreme Court is not something to be lightly cast aside." (Citation and punctuation omitted.) *Schwab v. Crosby*, 451 F3d 1308, 1325 (II) (B) (11th Cir. 2006). Such dicta may be of "considerable persuasive value, especially [when] it interprets the Court's own precedent." *United States v. City of Hialeah*, 140 F3d 968, 974 (III) (A) (11th Cir. 1998). However, the Court's dicta is less persuasive to us where, as it did in *Weaver*, the Court merely

considered an assumption proposed by a litigant for the sake of argument. Establishing a new legal test based on dicta regarding legal assumptions made by the Supreme Court comes with risks, and we should not presume that, if the Supreme Court actually decided the issue it assumed in *Weaver*, its holding would match its assumption. See, e.g., *Campbell-Ewald Co. v. Gomez*, 577 U. S. 153, 161-162 (II) (136 SCt 663, 193 LE2d 571) (2016) (explaining that the Court had previously "simply assumed, without deciding" a legal issue and deciding the issue contrary to the previous assumption).

Moreover, *Reid* is a sound precedent which faithfully applies the two-pronged *Strickland* test. See *Weaver*, 137 SCt at 1914 (Alito, J., concurring in judgment) (rejecting the *Weaver* majority's analysis and noting that cases involving courtroom closures "[call] for a straightforward application of the familiar standard for evaluating ineffective assistance of counsel claims" under *Strickland*). In our view, the *Strickland* test properly places a heavy burden on the defendant to prove that his counsel's deficient performance negatively impacted the outcome of the trial. See *State v. Mobley*,

24

296 Ga. 876, 877 (770 SE2d 1) (2015). In doing so, *Strickland* requires the defendant to show how the closure of the courtroom affected the outcome of his trial. See *Morris v. State*, 308 Ga. 520, 531 (6) (842 SE2d 45) (2020); see also *Weaver*, 137 SCt at 1915 (Alito, J., concurring in the judgment) ("[A]n attorney's error 'does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" (quoting *Strickland*, 466 U. S. at 691 (III) (B))). Because we believe *Reid* faithfully applies *Strickland*, we see no reason to depart from it or add to it here.

Finally, *Reid* rightly recognized that allowing a defendant to establish a claim of ineffective assistance without demonstrating that the failure to object affected the outcome of the trial "would encourage defense counsel to manipulate the justice system by intentionally failing to object in order to ensure an automatic reversal on appeal." 286 Ga. at 488 (3) (c); see also *Weaver*, 137 SCt at 1912 (III) (noting that "an ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, thus undermining the finality of jury

verdicts" (citation and punctuation omitted)); *Freeman v. State*, 328 Ga. App. 756, 760-761 (4) (760 SE2d 708) (2014) (noting that a defendant should "not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails" (citation and punctuation omitted)). *Reid*, like *Strickland*, incentivizes defense counsel to perform professionally and competently in the first instance and eliminates any impetus for defense counsel to strategically withhold an objection to a courtroom closure that violates the defendant's right to a public trial.

In light of the foregoing, we view *Reid* as a sound precedent, and we see no reason to adopt a separate "fundamental unfairness" test as a new avenue for establishing a claim of ineffective assistance of counsel in the context of a courtroom closure. *Weaver* does not command otherwise. We therefore decline Alexander's invitation to overrule *Reid*.[11]

---

[11] Because we conclude that *Reid* was correctly decided, "it is unnecessary for us to consider whether we should retain that decision under the doctrine of stare decisis." *Elliott v. State*, 305 Ga. 179, 209 (III) (C) (ii) n.21 (824 SE2d 265) (2019).

26

5. *We Affirm the Judgment of the Court of Appeals*

Applying *Reid* here, Alexander has not carried his burden of showing a reasonable probability that the outcome of his trial would have been different but for his counsel's failure to object to the closure of the courtroom during the witnesses' trial testimony. In his testimony at the hearing on his motion for new trial, Alexander suggested that, had his parents remained in the courtroom, the victims might have testified differently. But we routinely conclude that such speculation is insufficient to establish prejudice in a claim of ineffective assistance of counsel. See *Strickland*, 466 U. S. at 693 (III) (B) ("It is not enough for the defendant to show that [counsel's] errors had some conceivable effect on the outcome of the proceeding."); *Green v. State*, 304 Ga. 385, 391 (2) (a) (818 SE2d 535) (2018) ("Mere speculation on the defendant's part is insufficient to establish *Strickland* prejudice." (citation and punctuation omitted)). Thus, because Alexander has not made the requisite showing of prejudice, we see no error in the Court of Appeals' determination that Alexander's claim of ineffective assistance of counsel must be

27

rejected under *Reid*.[12] See *Alexander*, 356 Ga. App. at 395 (2) (a).

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed. All the Justices concur, except McMillian and Colvin, JJ., disqualified.*

Decided March 15, 2022.

Certiorari to the Georgia Court of Appeals — 356 Ga. App. 392.

*The Steel Law Firm, Brian Steel*, for appellant.

*J. Bradley Smith, District Attorney, Erica P. Shepley, Assistant District Attorney*, for appellee.

---

[12] Because we determine that Alexander has not shown that he was prejudiced by counsel's failure to object to the partial courtroom closure in this case, we need not consider whether his counsel performed deficiently. See *Lupoe v. State*, 300 Ga. 233, 240 (2) (794 SE2d 67) (2016) ("[I]n examining an ineffectiveness claim, a court need not 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" (quoting *Strickland*, 466 U. S. at 697 (IV))).