A93A2140. THOMPSON v. THE STATE.
A93A2141. CHANCELLOR v. THE STATE.
(440 SE2d 670)

BIRDSONG, Presiding Judge.

Robert E. Thompson and Wilbur Gill Chancellor were indicted and tried with two other defendants for violation of the Georgia Racketeering Influenced & Corrupt Organizations Act (RICO), and fifty-four counts of theft by taking, theft by deception, and theft by conversion. The scheme involved an "assumption business" called Southern Financial Services (SFS), in which the defendants acquired vehicles from persons having trouble making their payments, assumed responsibility for the payments, and resold the vehicle. SFS advertised its services in newspapers. The consigned vehicles were sold to "buyers" who, typically, made a down payment of around $1,000 and substantial monthly payments for two or three months; the vehicle was then repossessed by the lienholder, who had never been paid. Typically the buyer lost the vehicle, his down payment and all monthly payments; the owner lost the car, his equity, and a deficiency judgment to the lienholder. Some of the cars were on leases and would be resold without disclosure to the lessor or to the buyer. Defendants most often required cash payments of the money which was ostensibly to be paid to the lienholder; this cash was divided by de-

fendants, including Thompson and Chancellor, or deposited in SFS's account and then paid to them. The business was set up by a joint venture, limited partnership agreement between appellants Thompson and Chancellor and the two co-defendants. The secretary of the business testified that Thompson directed her in her job, and that both Thompson and Chancellor were engaged in the "assumption" activities; both would pocket the money paid by buyers. Even after a search warrant was served on SFS, Thompson took possession of payments and none was forwarded to any lienholder. Chancellor's name was filled in as payee on at least one of the down payment checks from buyers. Chancellor also went to locations to recover a car consigned by a person, assisted in rushing them through an "assumption" contract, and told them that SFS would assume the payments on the car. On one occasion a Thunderbird ended up in the possession of Chancellor's stepdaughter or her friend, without the lienholder being paid the three payments due after Chancellor took the car, and despite Chancellor's assurance to the owner that the first payment had been made. One owner, who was told by Chancellor that SFS had been in business 17 years, asked that the payments be sent to her so that she could ensure that they went to the lienholder. She got one check from SFS, but Thompson told her SFS did not have any money and that she would have to wait her turn. SFS later sent her a bad check, which SFS finally paid in cash. One owner was told his truck would remain with SFS for 90 days, but he learned that Chancellor was driving it. Chancellor called this owner and told him they would deal independently of SFS and that Chancellor would make the payments to the lienholder. Payments were not made and the owner found Chancellor's telephone disconnected. Another owner, in financial straits because of his son's illness, called SFS after seeing its advertisement; he left his car with SFS upon promises that SFS would make the payments, find a buyer and pay off the loan. Thompson was identified as a "co-partner" to the owner. After this owner received two delinquency notices from the lienholder, he learned Thompson had driven his car about 5,000 miles. The owner was unable to make up the delinquent payments and lost his car. There was evidence of several dozen vehicles handled in this manner, with variations on the theme.

Both Thompson and Chancellor testified that they were merely employees of the other two defendants, that they were caught up in a scam of which they had no knowledge, and that all money they received was commission for selling cars.

The jury returned guilty verdicts as to both appellants as to Count 1 (the RICO count) and as to the counts alleging theft by taking, deception, and conversion. The trial court struck the convictions for theft by taking, deception, and conversion, holding that they

merged into the RICO violation. Thompson and Chancellor enumerate identical errors below. *Held*:

1. (a) Appellants contend the evidence was insufficient to support the verdict for RICO violations because the jury in finding each appellant guilty of one RICO count did not indicate that it found at least two predicate acts on which it based its guilty verdict. *Martin v. State*, 189 Ga. App. 483 (376 SE2d 888), cited by appellants, does not require the jury to state that it has found a defendant guilty of two predicate acts or to state what those predicate acts were. Appellants do not cite to us any objection made at trial to the form of the verdict. Moreover, the form of the verdict was not error.

The jury was charged as to the definitions pertinent to RICO violations, and was instructed that in order to convict either appellant of a RICO violation, it must find each appellant guilty of at least two predicate acts. There is no basis for the assertion that the jury merely inferred appellants' guilt of RICO violations from the finding of guilt as to the theft counts. The jury separately found each appellant guilty of one RICO count and of the theft counts. We have reviewed the evidence and we find that it is sufficient to enable a rational trier of fact to find each appellant guilty of one count of RICO violation under OCGA § 16-14-1 et seq. as alleged, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

(b) Appellants contend the evidence was insufficient to support a finding of a predicate act based on theft by taking (OCGA § 16-8-2), theft by conversion (OCGA § 16-8-4), or theft by deception (OCGA § 16-8-3). As to theft by taking, appellants contend that no person was "deprived" of property "without justification" (OCGA § 16-8-1), because all "buyers" knew the money paid for down payments was not a monthly payment to be forwarded to the lienholder, but was SFS's fee; and the down payments were commissions which appellants earned with no intent to deprive anybody of property. As to theft by conversion, appellants contend nothing in the agreements prevented them from getting a commission, that they did not have fraudulent intent and did not "knowingly" convert the property of anyone to their own use in violation of the agreements. See, cited *Baker v. State*, 131 Ga. App. 48, 49 (205 SE2d 79). As for theft by deception, they contend the State did not prove they knowingly made representations by deceitful means or artful practice, for there was no evidence they failed to disclose to buyers that they were "assuming" payments.

These arguments overlook the fact that the appellants were not convicted of taking commissions for the sales of cars consigned for assumption, or for some other lawful act. They were convicted for taking monies in assumption transactions while actually failing to assume the payments for the vehicles, and actually failing to pay the

lienholders. There was ample evidence supporting findings of at least two predicate acts of theft by taking, conversion or deception.

(c) Appellants contend that it is not a crime, as asserted in the indictments for theft by deception, to fail to disclose that the existing lienholder had not given consent to a transfer of the vehicle. See *McNeil v. State*, 159 Ga. App. 441 (2) (283 SE2d 658). We find it unnecessary to address any possible defects in the language of those counts for the removal of the convictions for theft by deception leaves numerous predicate acts of theft by taking and theft by conversion, so that the RICO convictions are not unsupported. *Bethune v. State*, 198 Ga. App. 490 (1) (402 SE2d 276).

(d) Appellants contend they did not have the requisite knowledge of the criminal element of "enterprise" to sustain their RICO convictions. None of the provisions of the RICO Act, however, requires that each defendant in an enterprise have full knowledge of all facets and elements of the enterprise and all its members or actors. See OCGA § 16-14-4. An "enterprise" is not a criminal act in itself; it is a description of the entities involved in the RICO violations, and may include entities involved in illicit as well as licit activities. OCGA § 16-14-3 (6). It is the racketeering activity, i.e., the pattern of racketeering ("predicate acts") which is illegal (OCGA § 16-14-4 (a)), not the "enterprise," although the enterprise may be proved by the same evidence which proves a pattern of racketeering. See *Martin v. State*, supra.

2. The trial court did not err in denying appellants' motion for new trial on grounds that the State admitted tainted testimony. Appellants contend, in a vague fashion, that one alleged victim produced an "assumption" agreement which had been altered, and that because appellants' attorney gave the State a copy of the altered document, the State knew the agreement had been altered when it produced this witness and introduced his agreement. However, appellants fail to apprise us in their briefs in what manner any such document was "altered" and how such alteration was material to proof of any criminal act or to their defenses. Moreover, appellants could have introduced the document which they now allege is the correct agreement, but declined to do so. Further, the trial court struck the count relating to this witness and struck his testimony, alleviating any possible error in the admission of an allegedly altered document. Finally, although appellants contend this witness' testimony was the only testimony showing "conclusively" that appellants took large sums of money from the victims and failed to live up to the bargain, this is untrue, as there was ample testimony by other victims from which at least two predicate acts could "conclusively" be found by the jury under *Jackson v. Virginia*, supra.

3. Appellants contend the trial court erred in confusingly in-

structing the jury that it was not bound to return the same verdict on each count as to each defendant but that "the exception" to this is that, in order to find a defendant guilty of the RICO count, the jury must find that defendant engaged in, or aided and abetted, at least two predicate acts beyond a reasonable doubt. This charge made it clear that in order to find a defendant guilty of the RICO count, the jury must find that each defendant committed at least two predicate acts. As a whole, the charge correctly charged the law and did not confuse the jury even though a portion of it was not as clear and precise as could be desired. *Ideal Pool Corp. v. Champion*, 157 Ga. App. 380, 384 (277 SE2d 753).

*Judgments affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED JANUARY 11, 1994 —
RECONSIDERATION DISMISSED FEBRUARY 1, 1994 — RECONSIDERATION
DENIED FEBRUARY 9, 1994 — 

*F. Robert Raley*, for appellants.
*Charles H. Weston, District Attorney, Kimberly S. Shumate, Thomas J. Matthews, Assistant District Attorneys*, for appellee.