**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 19, 2015**

# In the Court of Appeals of Georgia

A15A1596. KILBY v. THE STATE.

ANDREWS, Presiding Judge.

Lowanda Kilby was charged under a 60-count indictment with 29 counts of theft by taking, 29 counts of computer theft, and one count each of theft by deception and violation of the Georgia Racketeering Influenced & Corrupt Organizations Act. A jury found her guilty on every count. The trial court merged three counts of theft by taking into the racketeering conviction and each of the computer theft counts into the theft by taking convictions for sentencing. On appeal, Kilby argues that the evidence was insufficient to support her convictions on theft by taking and racketeering, and that the trial court erred in sentencing her for felony theft by deception and in failing to merge the remaining counts of theft by taking into each other when imposing her sentence. We find no error and affirm.

On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence. See *Preston v. State*, 300 Ga. App. 433 (685 SE2d 420) (2009). We do not weigh the evidence nor assess the credibility of the witnesses, but determine only whether, viewing the evidence in the light most favorable to the jury's verdict, "a rational trier of fact could have found the essential elements of [each] crime beyond a reasonable doubt." (Citation and punctuation omitted.) Id.; see *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So construed, the evidence adduced at trial showed that in 2008, Kilby was hired as the director of the Boggs Mountain Humane Shelter ("Boggs Mountain"), a non-profit animal shelter and animal control facility located in Rabun County. In January 2012, Boggs Mountain created a separate entity to perform its animal control functions (i.e., euthanizing unadoptable and/or dangerous animals), and Boggs Mountain itself became a no-kill shelter whose mission it was "to reduce animal overpopulation without euthanasia." Kilby remained director of both facilities and reported to Boggs Mountain's Board of Directors.

Boggs Mountain offered a "Lucky Dog/Lucky Cat" sponsorship program whereby it accepted donations to cover the adoption fees and expenses associated with spaying/neutering and vaccinating less-adoptable (i.e., elderly or physically

2

challenged) animals in an effort to make them more appealing to potential owners. Donations could be made by the individual surrendering the animal or by any well-wisher desiring to support Boggs Mountain's mission.

At some point, Kilby's promotion of the Lucky Dog/Lucky Cat program morphed into an absolute guarantee that for $100, a sheltered animal would be adopted and not euthanized. She trained her staff to promote the program in the same manner. Kilby gave no regard to the condition of the animal or whether it fell within the sponsorship program's intended scope when making such guarantees and, indeed, went so far as to procure sponsorship money on dangerous and terminally ill animals that otherwise mandated euthanasia and were prohibited from entering Boggs Mountain.

At the same time, Kilby began randomly ordering that sheltered, otherwise healthy Lucky Dogs and Lucky Cats be euthanized, sometimes on the same day on which they were admitted. On at least one occasion, Kilby accepted sponsorship money on two animals that had already been euthanized. The euthanizations were conducted without notice to the individual who paid the sponsorship fee and to whom, under Kilby's direction, messages were often sent that the euthanized animal had been successfully adopted.

In June 2012, a whistleblowing employee at Boggs Mountain contacted the investigative team of a local television network to report Kilby's misconduct. On July 10, 2012, an investigative reporter posed as a potential animal donor and covertly videotaped Kilby promoting the Lucky Dog/Lucky Cat program as a way to guarantee an animal's adoption and denying that such animals were ever euthanized at Boggs Mountain. The reporter also obtained videotape footage of two seemingly healthy dogs in the shelter that he had learned from the whistlerblower were scheduled to be, and in fact were, euthanized that same day. Later that afternoon, the reporter returned with his camera crew in full view to confront Kilby, who maintained that no "Lucky" animals were subject to euthanization and claimed that the two dogs previously filmed had been transferred to a different facility.

The airing of the story prompted a criminal investigation through which the investigator learned that Kilby controlled all aspects of Boggs Mountain's operations, including all euthanasia and money handling decisions. Kilby repeatedly reminded her staff that "[t]here is only one supervisor or boss here, and it's me" and explicitly instructed them to "do as [they]'re told" and to never "question what I do or why." The staff reported that all cash received at Boggs Mountain was given to Kilby, and that employees were not trained to give receipts to financial donors and rarely did so.

4

The investigation further revealed that Kilby had linked two PayPal accounts intended for Boggs Mountain donations to her personal bank accounts and routed to herself a total of $10,500 in donation money. Finally, the investigator learned that, despite earning at most an annual salary of $42,000, Kilby played a total of $258,000 cash at Harrah's Cherokee Casino for the years 2010, 2011, and 2012.

The investigation resulted in Kilby's indictment. The 29 counts of theft by taking and 29 counts of computer theft were based upon specific transactions occurring in March 2012 through July 2012 during which Kilby transferred Boggs Mountain's sponsorship money into her personal bank accounts, and the single count of theft by deception was based upon Kilby's solicitation of Lucky Dog/Lucky Cat sponsorship money using the false guarantee that sponsored animals would not be euthanized. The RICO violation was predicated upon four specific incidences of theft by taking. A jury ultimately convicted Kilby on every count. She filed a motion for new trial, which was denied, and this appeal follows.

1. Kilby asserts that the evidence was insufficient to support her convictions on theft by taking and racketeering.[1] Specifically, she contends that the State failed

---

[1] Kilby also argues that the evidence was insufficient to support her convictions on computer theft. We need not consider that issue, however, because Kilby's computer theft convictions merged into her theft by taking convictions for sentencing

to prove the money that she diverted to her personal accounts was the property of Boggs Mountain and that venue was proper in Rabun County. We will address each argument in turn.

(a) Counts 2 thru 30 alleged that Kilby, while a fiduciary of Boggs Mountain, committed theft by taking in that she transferred a series of donations intended for Boggs Mountain into her own personal bank accounts. Specifically, the State presented the expert testimony of a forensic accountant who tracked 29 individual transactions in which money flowed from PayPal accounts attached to one of two email accounts, directorbmhs@windstream.com or directorbmhs@gmail.com, into one of two of Kilby's bank accounts, First American Bank & Trust or 1st Franklin Financial. The expert identified the date and amount of each individual transaction, as well as the email account associated with the transaction and the receiving bank account. The expert then explained that a total of $2,680 was transferred into Kilby's personal bank account at First American Bank & Trust using the PayPal account associated with directorbmhs@windstream.com, $824 was transferred into Kilby's personal bank account at 1st Franklin Financial using the PayPal account associated with directorbmhs@windstream.com, and $7,046 was transferred into Kilby's

purposes. See *Rainey v. State*, 286 Ga. App. 682, 682, n.1 (649 SE2d 871) (2007).

6

personal bank account at 1st Franklin Financial using the PayPal account associated with directorbmhs@gmail.com. The total amount of misappropriated funds was $10,550.

According to Kilby, the State's failure to identify the payor in each PayPal transaction and to present testimony that the money was intended to go to Boggs Mountain as opposed to Kilby personally rendered insufficient the evidence of theft by taking and racketeering. Evidence of that sort was unnecessary, however, because Kilby herself testified and expressly admitted that the subject transactions involved donation money intended for and belonging to Boggs Mountain. Kilby maintained, however, that she was simply "fundraising" using her own personal accounts and had not yet informed the Boggs Mountain Board of Directors that she was doing so. But two members of the Board testified unequivocally that Kilby was never authorized to solicit funds and deposit them into her personal bank accounts, which both the expert witness and Boggs Mountain's accountant deemed an unacceptable business practice.

Based upon this evidence, this jury was clearly authorized to conclude that the money involved belonged to Boggs Mountain and to otherwise reject Kilby's explanation for the transactions. See *Vaughn v. State*, 301 Ga. App. 391, 392 (687

SE2d 651) (2009) ("It is the jury's prerogative to choose what evidence to believe and what to reject. Issues regarding the credibility of witnesses are in the sole province of the jury and only the jury may analyze what weight will be given each witness's testimony.") (citation and punctuation omitted). It follows that the evidence sufficiently supported Kilby's convictions on 29 counts of theft by taking. See OCGA § 16-8-2 ("A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."); *Williams v. State*, 297 Ga. App. 150, 150-151 (676 SE2d 805) (2009) (affirming appellant's theft by taking convictions based upon evidence that she schemed to transfer victim's cash into a third-party account which she then withdrew). Kilby's racketeering charge was predicated upon four separate indicted incidents of theft by taking and, because the evidence was sufficient to sustain Kilby's conviction on those predicate acts, the evidence was also sufficient to sustain her RICO conviction. See OCGA § 16-14-4 (a) ("It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of . . . personal property of any nature, including money."); see also OCGA

8

§ 16-14-3 (5) (A) (xii) ("'Racketeering activity' means to commit . . . any crime which is chargeable by indictment under the laws of this state involving . . . [t]heft."); *Mosley v. State*, 253 Ga. App. 710, 711-712 (1) (560 SE2d 305) (2002) ("To prove a RICO violation, the state must show that the defendant committed two or more predicate criminal acts of the type included in the RICO statute as part of an enterprise engaging in a pattern of racketeering activity."); *Thompson v. State*, 211 Ga. App. 887, 889 (1) (a) (440 SE2d 670) (1994).

(b) Kilby further argues that the State failed to prove venue as to the theft by taking charges.[2] Georgia law provides that in a prosecution for the crime of theft by taking, venue is proper "in any county in which the accused exercised control over the property which was the subject of the theft." OCGA § 16-8-11. The State may prove venue using both direct and circumstantial evidence. See *Lanham v. State*, 291 Ga. 625, 626 (2) (732 SE2d 72) (2012).

Kilby was prosecuted in Rabun County. The State elicited direct testimony that Boggs Mountain was located in Rabun County, that Kilby's residence was located in Rabun County, that First American Bank & Trust was located in Rabun County, and

---

[2] Kilby further challenges proof of venue as to the 29 counts of computer theft. As we recognized in Division 1 (a), however, those convictions were merged and Kilby's arguments need not be considered. See *Rainey*, 286 Ga. App. at 682, n.1.

that one branch of 1st Franklin Financial was located in Rabun County. Kilby herself testified that her "fundraising" efforts were conducted in Rabun County, on either her home or her work computer. This evidence was more than sufficient to prove that Kilby exercised control over the money at issue in Rabun County and thus establish venue. See OCGA § 16-8-11; *Erick v. State*, 322 Ga. App. 71, 74-75 (744 SE2d 69) (2013). Kilby's argument that she drove to a 1st Franklin Financial branch in an adjoining county in order to withdraw funds from that account does nothing to change this result. See *Williams v. State*, 297 Ga. App. 150, 151 (2) (676 SE2d 805) (2009) (distinguishing between control and possession and noting that the law requires only that a defendant exert control over the subject property in the prosecuting county in order to render venue proper).

2. Kilby argues that the trial court erred in sentencing her for a felony, as opposed to a misdemeanor, on her conviction for theft by deception.[3] The delineation in the law is defined by the monetary amount of the theft: if the property which was the subject of the theft is more than $1,500 in value, the crime is a felony; if the

---

[3] See OCGA § 16-8-3 ("A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.")

property which was the subject of the crime is $1,500 or less, the crime is a misdemeanor. See OCGA § 16-8-12 (a) (1) (B), (C).

Count 1 of the indictment alleged that Kilby committed theft by deception in that she unlawfully obtained money, the property of 25 listed individuals with a value greater than $1,500 in the aggregate, with the intent to deprive the owners of the property by deceitful means in that she created a false impression that Boggs Mountain was a no-kill shelter and that payment of funds would ensure that the listed individual's animal(s) would not be euthanized.[4] Kilby argues that she was entitled to a misdemeanor sentence because several of the individuals alleged in the indictment either did not speak directly to Kilby or could not identify with whom he or she spoke and/or because the State failed to establish that more than $1,500 of the money at issue was paid directly to Kilby (as opposed to her staff).

Kilby's argument lacks merit. The evidence fully supported a finding that Kilby guardedly controlled all aspects of the Boggs Mountain facility, including how the Lucky Dog/Lucky Cat program was to be promoted and which animals were to be euthanized. The evidence further established that all sponsorship money, whether in

---

[4] We note that Count 1 of the indictment did not allege that Kilby committed the crime of theft by deception as a fiduciary of Boggs Mountain. See OCGA § 16-8-12 (a) (3).

11

the form of cash or other payment, was directed to and controlled by Kilby, who retained sole discretion to determine its direction and use. As such, a reasonable juror was authorized to conclude that the State proved each of the essential elements of theft by deception beyond a reasonable doubt. See OCGA § 16-2-21 ("Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that [s]he was a party thereto, although the person claimed to have directly committed the crime has not been prosecuted or convicted, has been convicted of a different crime or degree of crime, or is not amenable to justice or has been acquitted."); *Hill v. State*, 282 Ga. App. 743, 745 (2) (639 SE2d 637) (2006) ("OCGA § 16-2-21 does not require that one who is a party to the crime be indicted as a party; rather, it provides that one who is a party to the crime may be indicted, convicted and punished for that crime upon proof that he was a party to the crime.").

3. Finally, Kilby argues that the trial court erred in failing to merge each of the remaining non-merged counts of theft by taking into one count because, she contends, there is no material distinction between the offenses.[5]

---

[5] As before, Kilby's argument the 29 counts of computer theft should also have been merged will not be considered. See *Rainey*, 286 Ga. App. at 682, n.1.

12

The doctrine of merger prohibits the imposition of multiple punishment when the same conduct establishes the commission of more than one crime. See OCGA § 16-1-7 (a); *Drinkard v. Walker*, 281 Ga. 211, 212-213 (636 SE2d 530) (2006). Significantly, however, "the multiple convictions must be premised upon the same conduct in order for the rule to apply." (Citation and punctuation omitted.) *McKenzie v. State*, 302 Ga. App. 538, 539 (1) (a) (691 SE2d 352) (2010); see OCGA § 16-1-7 (a); *Drinkard*, 281 Ga. at 212. And "if the underlying facts show that one crime was completed prior to the second crime, there is no merger." (Citation and punctuation omitted.) *McKenzie*, 302 Ga. App. at 539 (1) (a).

Here, each and every transaction in which Kilby, a fiduciary of Boggs Mountain, took money belonging to Boggs Mountain with the intent of depriving the facility of that money constituted a separate and distinct completed crime. See OCGA § 16-8-2. The convictions, therefore, did not merge. Cf. *Arnold v. State*, 293 Ga. App. 395, 398 (3) (667 SE2d 167) (2008) (holding that each time appellant unlawfully took money from the victim, he completed a separate and distinct crime, despite the fact that the victim remained the same).

*Judgment affirmed. Miller and Branch, JJ., concur*.

13