**THIRD DIVISION**
**DILLARD, C. J.,**
**GOBEIL and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 11, 2019

# In the Court of Appeals of Georgia

A19A0118. ANDERSON v. THE STATE.

DILLARD, Chief Judge.

Following trial, a jury convicted Patricia Anderson on two counts of exploitation of an elder person, two counts of theft by taking, and eleven counts of financial-transaction-card fraud. On appeal, Anderson challenges the sufficiency of the evidence supporting her convictions and further argues that the trial court erred in (1) failing to apply the rule of lenity in sentencing her for the commission of a felony as to the two theft-by-taking convictions, (2) failing to merge several of the financial-transaction-card-fraud convictions for sentencing purposes, and (3) denying her claims of ineffective assistance of counsel. For the reasons set forth *infra*, we affirm Anderson's convictions, but we vacate her felony sentences as to the theft-by-taking convictions and, thus, remand the case to the trial court for resentencing.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that in January 2010, not long after her husband passed away, 89-year-old Alberta Wells moved from Jacksonville, Florida, to Savannah, Georgia, to live with her daughter, Anderson. As a result of her retirement savings, the sale of her Florida home, and bequests from her husband's will, Alberta possessed a significant amount of money in several different brokerage and bank accounts. And upon moving in with Anderson, Alberta agreed to allow her daughter to obtain power of attorney. Anderson then added her name to Alberta's checking, savings, money market, and brokerage accounts, providing her with access to her mother's money.

In May 2013, Anderson was no longer in a position to care for her mother. Consequently, Alberta's son and Anderson's brother, Carl Wells, agreed to move Alberta back to Florida to live with his family. Upon arriving in Savannah to move his mother and her belongings, Carl noticed that Alberta appeared significantly underweight and distressed. And while packing, Alberta's distress was exacerbated by Anderson's refusal to allow Carl to pack several of Alberta's personal items. Carl and his wife also observed that Anderson's house was littered with boxes from Amazon and other online retailers.

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

A few days after moving back to Florida, Alberta suffered a heart attack and was hospitalized for several weeks. During that hospitalization, an echocardiogram indicated that she also suffered a heart attack approximately ten days prior to the current one. And not long thereafter, Alberta granted Carl power of attorney, and he began to examine the records of her various accounts in an attempt to determine what happened to his mother's finances. In doing so, Carl discovered that hundreds of thousands of dollars appeared to be missing. Indeed, despite his mother's frugal nature, the records indicated that her money had been used for dozens of online purchases, catalog purchases, as well as numerous furniture and jewelry purchases. Ultimately, Carl learned that, despite the significant amount of money that had been in his mother's accounts when she moved in with Anderson, Alberta now had only $1.75 to her name.

Following her release from the hospital, Alberta took up residence at Carl's home, but eventually the need for 24-hour care resulted in her moving into an assisted-living facility. There, Alberta's physical and mental health improved, but nevertheless, in June 2014, she passed away. And unfortunately, with his mother's savings completely depleted, Carl was forced to sell Alberta's wedding ring to pay for her funeral expenses. At no point between the time Alberta moved back to Florida

and her passing did Anderson contact her mother. Not long thereafter, based on his suspicions that Anderson depleted their mother's various accounts without her knowledge or approval, Carl contacted law enforcement in Savannah, who opened an investigation into the matter.

In the subsequent investigation, detectives in the financial-crimes unit of the Savannah-Chatham County Police Department reviewed the records of Alberta's various accounts, including those to which Anderson added her name. And as a result of that review, the detectives discovered that, from 2010 to 2013, Anderson transferred over $150,000 from Alberta's checking account into her personal checking account. Moreover, during this same time period, Anderson also transferred $143,988 from Alberta's brokerage account into her personal checking account. Additionally, through their review of the accounts, the detectives learned that there had been numerous ATM withdrawals, some of which occurred after Alberta moved back to Florida. The detectives also discovered that, on four separate occasions, Anderson transferred funds from Alberta's accounts to an account in Malaysia owned by an individual named Olaniyan, who had been arrested in Canada on fraud charges. Eventually, one of the detectives interviewed Anderson, who claimed that, while she could not recall the exact amount of money transferred from her mother's accounts

4

to her personal checking account, she had her mother's permission to make the transfers.

Subsequently, the State charged Anderson, via indictment, with two counts of exploitation of an elder person, two counts of theft by taking, and eleven counts of financial-transaction-card fraud. The case then proceeded to trial, during which Carl and his wife testified regarding Alberta's move to Savannah and return to Florida, the state of her finances after her return to Florida, and their opinion that Alberta would not have authorized Anderson's extravagant spending of her life savings. The State also called one of Alberta's friends as a witness, who similarly testified that Alberta was never an extravagant spender. In addition, the jury heard Anderson's interview and testimony from the financial-crimes detectives regarding their investigation. Finally, the jury listened to testimony from Alberta's former financial advisor, who reported his suspicions of fraudulent activity to superiors based on the types of transfers he was seeing. Anderson did not testify, but her son—who lived in his mother's home for part of the time Alberta also resided there—testified that Alberta was not tech savvy and he doubted she made any online transfers; but he also claimed that Alberta allowed Anderson to spend her money. Nevertheless, at the conclusion of the trial, the jury found Anderson guilty on all charges in the indictment, and the

5

trial court imposed a sentence totaling six years, all of which were to be served in confinement.

Thereafter, Anderson obtained new counsel and filed a motion for new trial, in which she argued, *inter alia*, that her trial counsel rendered ineffective assistance. The State filed a response, and the trial court held a hearing on the motion, during which Anderson's trial counsel testified regarding her representation. Ultimately, the trial court denied Anderson's motion. This appeal follows.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] And in evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but "only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] Thus, the jury's verdict will be upheld so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make

[2] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following trial and conviction, the appellant no longer enjoys a presumption of innocence).

[3] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

out the State's case."[4] With these guiding principles in mind, we turn now to Anderson's claims of error.

1. Anderson first contends that the evidence was insufficient to support her convictions. Specifically, as to each charge on which she was convicted, she argues that the State failed to produce evidence that her use of the money from Alberta's various accounts was not authorized but, rather, a result of deception. We disagree.

With regard to the offense of exploitation of an elder, the former version of OCGA § 30-5-8 (a) (1) provided: "In addition to any other provision of law, the abuse, neglect, or exploitation of any disabled adult or elder person shall be unlawful."[5] And former OCGA § 30-5-3 (7.1) defined "elder person" as "a person 65 years of age or older who is not a resident of a long-term care facility. . . ."[6] As to

---

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

[5] *See* Ga. L. 2009, p. 725, § 2 (effective July 1, 2009). During the three-year span in which the State alleges Anderson committed this offense, the statute was not significantly amended. *See* Ga. L. 2012, Act 617, § 1; Ga. L. 2010, Act 624, § 30; Ga. L. 2009, p. 725, § 2.

[6] *See* OCGA § 30-5-3 (7.1) (2009). In 2013, the statute was amended such that subsection (7.1) was changed to subsection (6). *See* Ga. L. 2013, Act 132, § 1-5 (effective July 1, 2013).

theft by taking, OCGA § 16-8-2 provides that "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." Finally, as to financial-transaction-card fraud, OCGA § 16-9-33 (a) (2) (A) provides:

> A person commits the offense of financial transaction card fraud when, with intent to defraud the issuer; a person or organization providing money, goods, services, or anything else of value; or any other person; or cardholder, such person . . . [o]btains money, goods, services, or anything else of value by . . . [r]epresenting without the consent of the cardholder that he or she is the holder of a specified card[.]

In this matter, Count 1 of the indictment charged Anderson with exploitation of an elder person by alleging that she, "between the 8th day of March, 2010, and the 5th day of June, 2013, did, by means of deception, exploit Alberta Wells, an elder person who is more than 65 years of age . . . by improperly using her access to Alberta Wells's Bank Account *1859 to spend those funds for her own personal benefit . . . ." Count 3 charged Anderson with the same offense with the difference being the allegation that she improperly used "her access to Alberta Wells's Bank Account *4842[.]" Count 2 of the indictment charged Anderson with theft by taking

8

by alleging that she "between the 8th day of March, 2010, and the 5th day of June, 2013, being in lawful possession thereof, did unlawfully appropriate money from [Account * 1859], the property of Alberta Wells, with a value greater than $500.00, with the intention of depriving said owner of said property[.]" And Count 4 charged Anderson with the same offense, but alleged that she appropriated money from "[Account *4842]." Additionally, Count 5 charged her with financial-transaction-card fraud by alleging that she "on or about the 1st day of February, 2011, with the intent to defraud Wells Fargo . . . did unlawfully obtain $200, money, by presenting Wells Fargo Debit Card *2843, a financial transaction card, without the authorization of Alberta Wells, the cardholder . . . ." Finally, the remaining charges, Counts 6 through 15, charged Anderson with the same offense, with the difference being the date the offense occurred and, in some, the amount appropriated.

Here, as previously discussed, the evidence shows that from 2010 to 2013, Anderson transferred over $150,000 from Alberta's checking account and $143,988 from her brokerage account into her own personal checking account. The evidence also shows, again during this same time period and including after Alberta moved back to Florida, that numerous ATM withdrawals of various amounts had been made from Alberta's bank account. Furthermore, the evidence demonstrated that some of

9

these funds were transferred to a friend of Anderson in Malaysia, who had previously been arrested for fraud. In addition, there was evidence that Anderson spent Alberta's money extravagantly, in ways that she would not have countenanced, buying online merchandise, furniture, and jewelry. And based on her interview with one of the detectives, the jury could have questioned Anderson's credibility as to her sole defense that Alberta authorized such spending. Consequently, and contrary to Anderson's contention on appeal, there was at least circumstantial evidence that Alberta did not authorize Anderson's near total depletion of her various financial accounts.[7] Accordingly, the evidence was sufficient to support Anderson's convictions.[8]

---

[7] *See Freeman v. State*, 329 Ga. App. 429, 432 (1) (765 SE2d 631) (2014) (noting that any fact in a trial can be proven by circumstantial evidence); *Bettes v. State*, 329 Ga. App. 13, 15 (1) (763 SE2d 366) (2014) ("Both knowledge and intent to defraud may be proven by circumstantial evidence." (punctuation omitted)).

[8] *See Marks v. State,* 280 Ga. 70, 72-73 (1) (a) (623 SE2d 504) (2005) (finding that defendant's use of elder person's credit card to wire more than $5,000 to defendant's relative supported his conviction for elder abuse); *Escamilla v. State*, 344 Ga. App. 654, 655-56 (1) (811 SE2d 77) (2018) (holding that evidence defendant assisted victim and deceived her into transferring large sum of money from victim's account to defendant's account supported defendant's conviction for exploitation of an elder person); *Roberts v. State*, 344 Ga. App. 324, 331-32 (1) (810 SE2d 169) (2018) (holding that evidence defendant deceived elderly victims into providing her with their credit card and other financial information was sufficient to support her convictions for exploitation of an elder person and financial-transaction-card fraud);

10

2. Anderson also contends that the trial court erred in failing to apply the rule of lenity by imposing a felony sentence as to the two theft-by-taking convictions. We agree and, thus, vacate the sentences as to those convictions.

The Supreme Court of the United States has referred to the rule of lenity "as a sort of junior version of the vagueness doctrine," which requires fair warning as to what conduct is proscribed.[9] The rule of lenity applies where "two or more statutes prohibit the same conduct while differing only with respect to their prescribed

*Williams v. State*, 297 Ga. App. 150, 150-51 (1) (676 SE2d 805) (2009) (finding that evidence defendant assisted victim's grandson in scheme in which grandson transferred funds from victim's account into defendant's account was sufficient to support defendant's theft-by-taking conviction); *Rogers v. State*, 259 Ga. App. 516, 517-18 (1) (578 SE2d 169) (2003) (finding that evidence defendant used his former brother-in-law's credit card without permission to make various purchases sufficiently supported defendant's conviction for financial-transaction-card fraud); *see also Bradford v. State*, 266 Ga. App. 198, 201-02 (3) (596 SE2d 715) (2004) (noting that the State may indict someone for theft by taking, but prove theft by deception, which is committed when a person obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property).

[9] *United States v. Lanier*, 520 U.S. 259, 266 (II) (117 SCt 1219, 137 LE2d 432) (1997) (punctuation omitted); *accord McNair v. State*, 293 Ga. 282, 283 (745 SE2d 646) (2013); *Banta v. State*, 281 Ga. 615, 617 (2) (642 SE2d 51) (2007); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 299 (1st ed. 2012) (noting that the rule-of-lenity canon is justified by the well-established precept that "when the government means to punish, its commands must be reasonably clear").

11

punishments."[10] And according to this rule, when "any uncertainty develops as to which penal clause is applicable, the accused is entitled to have the lesser of the two penalties administered."[11] Importantly, the essential requirement of the rule of lenity is that "both crimes could be proved with the same evidence."[12]

As discussed *supra*, Count 2 of the indictment charged Anderson with theft by taking by alleging that she, "between the 8th day of March, 2010, and the 5th day of June, 2013, being in lawful possession thereof, did unlawfully appropriate money from [Account *1859], the property of Alberta Wells, with a value greater than $500.00, with the intention of depriving said owner of said property[.]" And Count 4 charged Anderson with the same offense as to Anderson's account designated "Account *4842." Thus, under the indictment, Anderson committed the offenses of

---

[10] *White v. State*, 319 Ga. App. 530, 531 (2) (737 SE2d 324) (2013) (punctuation omitted); *accord Dixon v. State*, 278 Ga. 4, 7 (1) (d) (596 SE2d 147) (2004); *McNair*, 293 Ga. at 284; *Daniels v. State*, 320 Ga. App. 340, 344 (3) (739 SE2d 773) (2013).

[11] *White*, 319 Ga. App. at 531 (2) (punctuation omitted); *accord McNair*, 293 Ga. at 284; *Daniels*, 320 Ga. App. at 344 (3).

[12] *Gordon v. State*, 334 Ga. App. 633, 637 (780 SE2d 376) (2015) (punctuation omitted); *accord Marlow v. State*, 339 Ga. App. 790, 795 (2) (792 SE2d 712) (2016).

theft by taking at some point within this three-year span, and the State was only required to prove the offense occurred within that time span.

But during this three-year time frame, the applicable sentencing statute changed. Former OCGA § 16-8-12 (a) (1) (2009) provided: "A person convicted of a violation of Code Sections 16-8-2 through 16-8-9 shall be punished as for a misdemeanor except . . . [i]f the property which was the subject of the theft exceeded $500.00 in value, by imprisonment for not less than one nor more than ten years or, in the discretion of the trial judge, as for a misdemeanor[.]" Nevertheless, effective July 1, 2012,[13] OCGA § 16-8-12 was amended and at that point it provided:

> A person convicted of a violation of Code Sections 16-8-2 through 16-8-9 shall be punished as for a misdemeanor except . . . If the property which was the subject of the theft was at least $1,500.01 in value but was less than $5,000.00 in value, by imprisonment for not less than one nor more than five years and, in the discretion of the trial judge, as for a misdemeanor[.][14]

Thus, the 2012 amendment raised the value of the subject property—from $500 to $1,500.01—that the State was required to prove before a felony sentence could be

---

[13] *See* Ga. L. 2012, p. 112, §4-1 (a).

[14] OCGA § 16-8-12 (a) (1) (C) (2012).

imposed, but also limited such sentence to five years unless an even higher value (at least $5,000) was alleged and proven.

Given that the trial court imposed a sentence of six years to serve on each of Anderson's theft-by-taking convictions, it appears to have sentenced her under the pre-amendment version of OCGA § 16-8-12. But because the indictment only generally alleged that the offenses occurred at some point in a three-year span and the jury was only provided a general verdict form, it is impossible to discern if it found Anderson guilty on one or both of these counts for conduct occurring before or after the July 1, 2012 amendment of the statute. As a result, Anderson cannot be sentenced to the longer term imposed by the pre-amendment version of OCGA § 16-8-12 (a).[15]

---

[15] *See Davis v. State*, 323 Ga. App. 266, 274-75 (8) (746 SE2d 890) (2013) (holding that because defendant was charged with aggravated sexual battery for conduct occurring over a two-year span, and the general verdict form rendered it impossible to determine if the jury pronounced guilt for conduct occurring before or after the applicable statute was amended to impose a longer sentence, the rule of lenity required the trial court to impose the lesser sentence); *Daniels*, 320 Ga. App. at 344 (3) (holding that the rule of lenity applied in the prosecution of defendant for multiple counts of child molestation and incest alleged to have occurred both prior to and after the enactment of statutes imposing harsher sentences for the offenses and, therefore, trial court was required to impose more lenient sentence).

Accordingly, we vacate this aspect of Anderson's sentence and remand the case to the trial court for resentencing.[16]

3. Anderson also contends that the trial court erred in failing to merge several of the financial-transaction-card-fraud convictions for sentencing purposes. We disagree.

When two or more charges are "indistinguishable because all of the averments, including date (which was not made an essential element), victim, and description of defendant's conduct constituting the offense were identical, only one sentence may be imposed."[17] But when an averment in one count of an accusation or indictment "distinguishes it from all other counts, either by alleging a different set of facts *or* a different date which is made an essential averment of the transaction, the State may on conviction punish the defendant for the various crimes."[18] Put simply, if the

---

[16] *See Davis*, 323 Ga. App. at 275-76 (8) (vacating defendant's sentence in light of trial court's failure to apply the rule of lenity and remanding the case for re-sentencing); *Daniels*, 320 Ga. App. at 344-45 (3) (same).

[17] *Daniels*, 320 Ga. App. at 342 (2) (punctuation omitted).

[18] *Simmons v. State*, 271 Ga. App. 330, 332 (2) (609 SE2d 678) (2005) (punctuation omitted) (emphasis in original); *accord Byrd v. State*, 344 Ga. App. 780, 788 (3) (811 SE2d 85) (2018).

15

underlying facts show that "one crime was completed prior to the second crime, there is no merger."[19]

As previously noted, the State charged Anderson with eleven counts of financial-transaction-card fraud. In Counts 5, 6, 9, and 15, the State alleged that, on four separate dates, Anderson "did unlawfully obtain $200, money, by presenting Wells Fargo Debit Card *2843, a financial transaction card, without the authorization of Alberta Wells . . . ." Similarly, in Counts 7, 8, and 13, the State alleged that, on three separate dates, Anderson "did unlawfully obtain $500, money, by presenting Wells Fargo Debit Card *2843, a financial transaction card, without the authorization of Alberta Wells . . . ." And following conviction, the trial court imposed a sentence of three years to serve on each count. Anderson now contends that the trial court erred in failing to merge Counts 5, 6, 9, and 15, arguing that the charges in those counts are indistinguishable other than the date the alleged fraud occurred, which she claims were not material averments. Anderson identically contends that the court erred in failing to merge Counts 7, 8, and 13.

---

[19] *Kilby v. State*, 335 Ga. App. 238, 244 (3) (780 SE2d 411) (2015) (punctuation omitted).

16

Although the State employed the phrase "on or about" preceding the date of the alleged fraudulent conduct in the indictment, it also alleged specific and separate dates that such conduct occurred. Indeed, none of these dates overlapped, and each count of financial-transaction-card fraud was supported by specific, distinguishable, and independent documentary evidence at trial in the form of Alberta's account records.[20] Moreover, the trial court did not instruct the jury that the dates of the offensive conduct alleged in the indictment were *not* material averments but, rather, instructed the jury it could only return a guilty verdict if it found that Anderson "committed the offense or offenses as alleged in the Indictment . . . on or about the time alleged in the Indictment . . . ."[21] Given these particular circumstances, the record

[20] *See Byrd*, 344 Ga. App. at 788 (3) (holding that when "the averments of each count refer to a different period of time, each period of time is made an essential averment of the transaction, and each count of the indictment is distinguishable and may be punished separately" (punctuation omitted)); *Kilby*, 335 Ga. App. at 244 (3) (holding that defendant's convictions did not merge because each and every transaction in which defendant, a fiduciary of a non-profit animal shelter, took money belonging to the shelter with the intent of depriving the facility of that money constituted a separate and distinct completed crime); *Arnold v. State*, 293 Ga. App. 395, 398 (3) (667 SE2d 167) (2008) (holding that each time defendant unlawfully took money from the victim, he completed a separate and distinct crime, despite the fact that the victim remained the same).

[21] *Cf. Daniels*, 320 Ga. App. at 342 (2) (holding that in prosecution for multiple counts of child molestation and incest, in which several of crimes alleged were identical except for different date ranges and trial court specifically instructed jury

17

does not support a finding that Anderson was "convicted on more than one count for the same actions committed on a single day or during the same period of days, as would be required for the convictions to merge as a matter of fact."[22] Thus, the trial court did not err by failing to merge these convictions.[23]

4. Finally, Anderson contends the trial court erred in denying several claims that her trial counsel rendered ineffective assistance. Again, we disagree.

In order to evaluate Anderson's claims of ineffective assistance of counsel, we apply the two-pronged test established by the Supreme Court of the United States in

---

the dates alleged in the indictment were *not* material averments, trial court was required to merge subject convictions for sentencing purposes).

[22] *Byrd*, 344 Ga. App. at 788 (3) (punctuation omitted).

[23] *See id.* (holding that merger was not required when "the averments of each count refer to a different period of time, each period of time is made an essential averment of the transaction, and each count of the indictment is distinguishable and may be punished separately" (punctuation omitted)); *Kilby*, 335 Ga. App. at 244 (3) (holding that defendant's convictions did not merge because each and every transaction in which defendant, a fiduciary of a non-profit animal shelter, took money belonging to the shelter with the intent of depriving the facility of that money constituted a separate and distinct completed crime); *Arnold v. State*, 293 Ga. App. 395, 398 (3) (667 SE2d 167) (2008) (holding that merger was not required because each time defendant unlawfully took money from the victim, he completed a separate and distinct crime, despite the fact that the victim remained the same).

*Strickland v. Washington*,[24] which requires Anderson to show that her trial counsel's performance was "deficient and that the deficient performance so prejudiced her that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[25] In doing so, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[26] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[27] And importantly, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would

---

[24] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[25] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012) ("[F]irst, appellant must show that counsel's performance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance." (punctuation omitted)).

[26] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[27] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

19

have followed such a course."[28] Furthermore, unless clearly erroneous, we will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[29] Bearing this analytical framework in mind, we turn now to Anderson's specific claims.

(a) *Failure to introduce evidence.* Anderson argues that her trial counsel performed deficiently by failing to introduce Alberta and her late husband's—Anderson and Carl's father—reciprocal wills, Alberta's grant of the Georgia power of attorney and advance directive to Anderson, and her later grant of the Florida power of attorney to Carl. She further contends that this decision prejudiced her case because introducing these documents would have shown that her parents did not trust Carl and, therefore, would have undermined his credibility.

Nevertheless, decisions regarding whether and how to conduct cross-examinations and what evidence to introduce are "matters of trial strategy and tactics and are within the exclusive province of counsel after consultation with the

---

[28] *Id.*

[29] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

client."[30] In fact, such tactical decisions provide "no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them."[31] And here, it was undisputed that Alberta granted Anderson power of attorney when she moved to Savannah and during trial counsel's cross examination, Carl readily acknowledged that his parents had wills and that his father left his entire estate to Alberta. Additionally, Anderson's son also testified about his grandfather's will and that it bequeathed nothing to Carl. Given these particular circumstances, the wills and documents pertaining to power of attorney were cumulative of evidence that was introduced through uncontested witness testimony, and thus, we cannot conclude that trial counsel's decision not to introduce these documents was patently unreasonable.[32]

---

[30] *Buis v. State*, 309 Ga. App. 644, 647 (710 SE2d 850) (2011) (punctuation omitted).

[31] *Id.* at 648 (punctuation omitted).

[32] *See id.* at 647-48 (holding trial counsel's decision not to request production of duct tape that was used to bind defendant when he was allegedly kidnapped—his alibi to theft charges—was not patently unreasonable, and, thus, it was not ineffective assistance, as the duct tape itself was cumulative of evidence that was introduced through defendant's recorded police interview and his trial counsel's cross-examination of detective); *Sanders v. State*, 293 Ga. App. 534, 539-40 (3) (667 SE2d 396) (2008) (holding defense counsel's failure to take photographs of the home at the time of the alleged crimes did not constitute ineffective assistance because the photographs would have been cumulative of witness testimony concerning the home); *Grier v. State*, 276 Ga. App. 655, 662-63 (4) (b) (624 SE2d 149) (2005) (holding that

Accordingly, the trial court did not err in denying this claim of ineffective assistance of counsel.

(b) *Failure to argue the motion for directed verdict outside the presence of the jury.* Following the charge conference and the jury's return to the courtroom, Anderson's trial counsel rested the defense's case and also renewed her earlier motion for directed verdict, arguing the State failed to show that Anderson's use of Alberta's accounts was unauthorized. And upon the conclusion of counsel's argument, the trial court denied Anderson's motion. Anderson maintains that her trial counsel rendered ineffective assistance by arguing this motion in the jury's presence. Specifically, she asserts that by failing to argue this unsuccessful motion outside the presence of the jury, counsel prejudiced her case by allowing the jury to infer that the trial court disagreed that the State failed to present evidence of unauthorized use of Alberta's accounts. This argument lacks merit.

---

because the evidence on the videotape was cumulative of evidence trial counsel introduced through the cross-examination of investigator, trial counsel's decision not to introduce videotape was a matter of strategy and could not amount to ineffective assistance of counsel).

22

In essence, Anderson's argument is that her trial counsel's failure to argue the motion for directed verdict outside the jury's presence resulted in a judicial comment on the sufficiency of the evidence in violation of OCGA § 17-8-57, which provides: "It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused."[33] But here, the trial court simply denied Anderson's motion without further comment and later, during its jury instructions, explained: "Ladies and gentlemen, by no ruling or comment that the Court has made during the progress of the trial has the Court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, upon the guilt or innocence of the Defendant." Thus, Anderson's claim that her trial counsel rendered ineffective assistance in this regard lacks merit.[34]

---

[33] *See* OCGA § 17-8-57 (a) (1).

[34] *See Berry v. State*, 267 Ga. 476, 481 (4) (f) (480 SE2d 32) (1997) (holding trial counsel did not render ineffective assistance because it did not impermissibly comment on evidence in murder prosecution by its comment on an evidentiary matter when court instructed the jury that anything it said during trial was not intended to suggest a verdict); *Hartzler v. State*, 332 Ga. App. 674, 682 (4) (774 SE2d 738) (2015) (noting that because the trial judge specifically instructed the jury that "by no ruling or comment that the court has made during the progress of the trial have I intended to express any opinion on the facts of the case, the credibility of the witnesses, the evidence or what your verdict should be," judge's earlier reference to

(c) *Failure to object to State's improper remarks during closing argument.*

Although not enumerated as separate claims of error, Anderson contends that her trial counsel rendered ineffective assistance by failing to object to several allegedly improper remarks made by the State's prosecutor during closing arguments. All of the remarks that Anderson claims were objectionable occurred in the final part of the prosecutor's closing arguments, in which she stated as follows:

> It's probably true. There's no money left to get back, but that's not what's important. What's important is redemption for Alberta Wells because she died penniless. No, I'm not going to sit here and argue that she died at the hands of the Defendant, but she died penniless, heartbroken, that's for sure, and devastated that her daughter would do this to her.

> And just because the victim is dead doesn't mean that you can't make that happen, make redemption happen. Think how many cases that juries try every single day, five days a week, and return a verdict of guilty where the victim is dead. We do it all day, all week, in Chatham County, and you can do that today, not because of sympathy but because the evidence is there, and you have to do your duty as a citizen of Chatham County to make sure that this doesn't happen again and that elder exploitation is a crime and just because you are put on a bank account, it's not a license to steal. It never has been and it never will be.

_____

the decedent as the "victim" did not violate OCGA § 17-8-57).

24

Anderson argues that in this closing, the prosecutor improperly implored the jury to convict based on sympathy for the victim, stated facts not supported by evidence, referenced other cases, and argued that Anderson would pose a danger in the future if not convicted. Although they lack merit, we will address each of these contentions in turn.

(i) Anderson first maintains the prosecutor improperly argued that it was important for Alberta to obtain "redemption," claiming that this constituted an attempt to persuade the jury to decide the case based on sympathy for the victim rather than the evidence. A prosecutor is, of course, "granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses."[35] And here, during the hearing on the motion for new trial, when asked why she did not object to the prosecutor's remarks, Anderson's trial counsel explained that she usually does not object during closing arguments unless the

_____

[35] *Maurer v. State*, 320 Ga. App. 585, 596 (6) (h) (740 SE2d 318) (2013) (punctuation omitted).

25

remarks are egregious, and she did not consider these remarks to be out of bounds. This Court has previously held that we will not second-guess such strategy.[36]

Moreover, in using the term "redemption," the prosecutor was merely echoing Carl's testimony in which he stated that he only wanted "redemption for my mother," which in context clearly meant he wanted justice. Anderson takes issue with this interpretation, asserting that "redemption" and "justice" are not synonymous terms. But at the risk of responding to Anderson's pedantry in kind, "redemption" is commonly understood as "[t]he act of freeing, delivering or *restoring in some way*."[37] Furthermore, one of the definitions of "justice" is "[t]he exercise of authority or power in maintenance of right; *vindication of right* by assignment of reward or

[36] *See Spencer v. State,* 287 Ga. 434, 439-40 (4) (696 SE2d 617) (2010) (noting trial counsel's explanation for not objecting to closing argument included his "general rule" not to object during closing argument unless opposing counsel says "really something extremely over the top" so as to avoid getting objections during his own closing argument, and that trial counsel had not felt that the prosecutor's argument had risen to that level was reasonable strategy); *Maurer*, 320 Ga. App. at 595-96 (6) (h) (noting that counsel testified that he did not typically object to closing argument because it would "draw the jury's attention" to such statements and holding that we would not second guess such strategy); *Caylor v. State*, 255 Ga. App. 362, 364 (1) (566 SE2d 33) (2002) (holding that trial counsel's testimony that he chooses not to object in opening or closing "unless it's really, really egregious" was reasonable trial strategy and did not equate with ineffective assistance of counsel).

[37] The Compact Oxford English Dictionary 1535 (2d ed. 1991) (emphasis added).

punishment."[38] Thus, equating "redemption" with the "vindication of [a] right" hardly amounts to semantic gymnastics. As a result, remarks that victims are seeking justice are not objectionable, and Anderson's trial counsel did not render ineffective assistance of counsel by failing to object to them.[39]

(ii) Anderson also contends that her trial counsel performed deficiently by failing to object when the prosecutor stated that Alberta died "penniless and heartbroken," arguing that this remark was not supported by evidence and was inflammatory. But this contention is belied by the record. First, there was little dispute that Alberta's bank and brokerage accounts were nearly empty when she left Savannah. Furthermore, both Carl and his wife testified that Alberta was upset at the time they moved her from Anderson's home back to Florida. And although they claimed Alberta's spirits improved after moving into the assisted-care facility, Carl also testified that Alberta and Anderson never spoke again after the move. Based on this evidence, the jury was authorized to infer that Anderson's conduct left her mother

---

[38] *Id.* at 905 (emphasis supplied).

[39] *See Murray v. State*, 297 Ga. App. 571, 572-73 (1) (677 SE2d 745) (2009) (holding that remarks by prosecutor that victims are seeking justice are not improper and, therefore, defense counsel's failure to object to such remarks does not constitute ineffective assistance); *Carr v. State*, 282 Ga. App. 199, 200 (2) (638 SE2d 348) (2006) (same).

"heartbroken," and, as previously noted, "a prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion to argue reasonable inferences from the evidence."[40] Accordingly, any objection to this particular remark would have lacked merit, and trial counsel's failure to make a meritless objection to the prosecutor's closing argument is not evidence of ineffective assistance."[41]

(iii) Additionally, Anderson maintains her trial counsel performed deficiently by failing to object when the prosecutor argued that the jury could convict her of the charged offenses even without the testimony of Alberta. More precisely, Anderson argues that the prosecutor's explanation that juries frequently return guilty verdicts in cases where the victim is dead by imploring, "we do it all day, all week, in Chatham County[,]" warranted an objection. Anderson asserts that such reference to other cases in which the prosecutor was involved amounted to "an improper comment on facts not in evidence[,] [and that] the law forbids the introduction into a case, by

[40] *Faust v. State*, 302 Ga. 211, 219-20 (4) (c) (805 SE2d 826) (2017) (punctuation omitted).

[41] *See id.* (holding that, contrary to defendant's argument, prosecutor's remark that defendant intended to rob murder victim during closing argument was an inference the jury could draw from the evidence and, thus, any objection by trial counsel to such remark would have lacked merit).

28

way of argument, of facts not in the record and calculated to prejudice the accused."[42] But that is not what occurred here. Rather, the complained-of remark constituted a proper argument that the law imposes no requirement that the victim testify and referenced, only generally, cases in which the victim is dead as an example of same.[43] Given these particular circumstances, the trial court did not err in denying Anderson's claim of ineffective assistance of counsel in this regard.

(iv) Finally, Anderson contends that her counsel rendered ineffective assistance when she failed to object to one of the prosecutor's concluding remarks in her closing argument, in which she implored the jury to return a guilty verdict "to make sure that this doesn't happen again and that elder exploitation is a crime and just because you are put on a bank account, it's not a license to steal." Anderson argues that these remarks constituted an improper comment attributing future dangerousness. We disagree.

---

[42] *Booker v. State*, 242 Ga. App. 80, 84 (3) (528 SE2d 849) (2000) (punctuation omitted); *see McKibbins v. State*, 293 Ga. 843, 849 (3) (a) (750 SE2d 314) (2013) (noting that a prosecutor ought not offer comparisons in the presence of the jury between the case at hand and other cases with which he or she is familiar).

[43] *Cf. Booker*, 242 Ga. App. at 84 (3) (holding that it was improper for prosecutor to reference specific murder cases he had tried, obviously, without the victim's testimony but explaining the fact that a jury can convict without the victim's testimony and referencing murder cases generally as an example is not improper).

Under present authority, an argument that a defendant represents a future danger to society is "impermissible when a jury is determining guilt or innocence."[44] This is because such remarks are "irrelevant to the question of whether, under the facts introduced into evidence, the defendant is guilty beyond a reasonable doubt of the crime charged."[45] That said, general appeals to enforce the criminal law for the safety of the community have long been held to "be within the bounds of permissible argument."[46] And here, setting aside whether the offenses for which Anderson was convicted even entail the type of "danger" contemplated by our caselaw in this regard,

---

[44] *Stroud v. State*, 272 Ga. 76, 77 (2) (526 SE2d 344) (2000); *see Andrews v. State*, 293 Ga. 701, 704 (4) (2013) (noting that it is improper for the State to make statements as to defendant's future dangerousness during closing argument); *Sterling v. State*, 267 Ga. 209, 210 (2) (477 SE2d 807) (1996) (holding that State's argument regarding defendant's future dangerous during closing argument of guilt/innocence phase of trial was improper).

[45] *Wyatt v. State*, 267 Ga. 860, 864-65 (2) (b) (485 SE2d 470) (1997); *accord Williams v. State*, 261 Ga. App. 511, 516 (3) (583 SE2d 172) (2003).

[46] *Smith v. State*, 296 Ga. 731, 737 (2) (c) (770 SE2d 610) (2015); *see Spencer v. State*, 287 Ga. 434, 439-40 (4) (696 SE2d 617) (noting that a prosecutor may argue to the jury to convict for the safety of the community); *Gibson v. State*, 283 Ga. 377, 381 (659 SE2d 372) (2008) (holding that it was appropriate for prosecutors to urge the jury to speak on behalf of the community and rid it of robbers and murderers); *Emmanuel v. State*, 300 Ga. App. 378, 381 (4) (685 SE2d 361) (2009) (holding that the State may appeal to the jury to convict for the safety of the community); *Hines v. State*, 246 Ga. App. 835, 837 (3) (541 SE2d 410) (2000) (same).

the alleged offending remark did not specifically refer to Anderson but rather "appealed to the jury to enforce the law for the safety of the community."[47] Thus, as the State's closing argument was not improper on this particular basis, trial counsel's failure to object to the State's argument is not evidence of ineffective assistance.[48] Accordingly, the trial court did not err in denying Anderson's claim that her trial counsel rendered ineffective assistance in this respect.

---

[47] *Smith*, 296 Ga. at 737 (2) (c); *see McClain v. State*, 267 Ga. 378, 385 (477 SE2d 814) (1996) ("A prosecutor may appeal to the jury to convict for the safety of the community or to send a message to others that criminal activities will be punished.").

[48] *See Smith*, 296 Ga. at 736-37 (2) (c) & n.6 (holding that prosecutor's remarks during closing argument that "crime is a cancer that eats away at society," and that the jury should "stand in the way of injustice," reflected the State's theory that the motive for the crime was vigilante justice and generally and properly appealed to the jury to enforce the law for the safety of the community, and therefore, trial counsel's failure to object did not amount to ineffective assistance); *Spencer*, 287 Ga. at 439-40 (4) (holding that prosecutor's statement during closing argument that "[t]his is your community and these are your streets, and you can say yes to this or you can say no to this," was not an improper reference to the defendant's future dangerousness, and thus, defendant's trial counsel did not render ineffective assistance by failing to object).

For all these reasons, we affirm Anderson's convictions, but we vacate her felony sentences as to the theft-by-taking convictions and, thus, remand the case to the trial court for resentencing.

*Judgment affirmed in part; vacated in part; and remanded for resentencing. Gobeil and Hodges, JJ., concur.*